## MATTER OF JIMENEZ-LOPEZ

### In Exclusion Proceedings

### A-29279152

*Decided by Board November 3, 1993*

An alien admitted for lawful temporary residence under section 210 of the Immigration and Nationality Act, 8 U.S.C. § 1160 (1988 & Supp. IV 1992), who is paroled into the United States for criminal prosecution under 8 C.F.R. § 212.5(a)(3) (1990) does not subsequently make an "entry" as that term is defined under the immigration laws when the Immigration and Naturalization Service adjusts his status to that of a lawful permanent resident under section 210(a)(2)(B) of the Act, and 8 C.F.R. § 210.5(a)(2) (1990).

EXCLUDABLE: Act of 1952—Sec. 212(a)(23) [8 U.S.C. § 1182(a)(23)]—Trafficker

ON BEHALF OF APPLICANT:
  Pro se

ON BEHALF OF SERVICE:
  Lee Abbott
  General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

At the conclusion of a hearing conducted on March 10, 1993, an immigration judge terminated these exclusion proceedings and certified her decision to us for review pursuant to 8 C.F.R. §§ 3.1(c) and 3.7 (1993). In an order dated April 19, 1993, we remanded the record to the immigration judge for preparation of a transcript of the proceedings and her oral decision and for compliance with the requirements of certification as set forth at 8 C.F.R. § 3.7 (1993). A transcript of the proceedings and the decision of the immigration judge was prepared and forwarded to the applicant and the attorney for the Immigration and Naturalization Service. Both have submitted statements in support of their respective positions and we deem the case ripe for our review. The record will be remanded to the immigration judge for further proceedings.

The facts in this case are not in dispute. The applicant is a 32-year-old native and citizen of Mexico who applied for lawful temporary residence under the special agricultural worker ("SAW") provisions set forth at section 210 of the Immigration and Nationality Act, 8 U.S.C.

§ 1160 (1988 & Supp. IV 1992), on June 2, 1988. That application was approved on November 10, 1989.

On April 8, 1990, the applicant was returning from a trip to Mexico and presented himself for inspection as a returning temporary resident. Because the motor vehicle in which the applicant was traveling was found to contain marijuana, the applicant was arrested and charged with excludability as an alien who the immigration officer had reason to believe was a drug trafficker under section 212(a)(23) of the Act, 8 U.S.C. § 1182(a)(23) (1988).[1] The applicant was apparently then paroled into the United States pursuant to 8 C.F.R. § 212.5(a)(3) (1990) for the purpose of his criminal prosecution.

On October 1, 1990, the applicant was convicted, in the United States District Court for the Southern District of California, of importation of a controlled substance and possession of a controlled substance with intent to distribute. He was sentenced to a concurrent term of imprisonment of 46 months and is currently serving that sentence.

On December 1, 1990, the Immigration and Naturalization Service adjusted the applicant's status as a lawful temporary resident to that of a lawful permanent resident pursuant to the provisions of section 210(a)(2)(B) of the Act, 8 U.S.C. § 1160(a)(2)(B) (1988), and 8 C.F.R. § 210.5(a)(2) (1990). No appeal is pending from that adjustment.

The immigration judge, at a hearing conducted on March 10, 1993, terminated the exclusion proceedings on the ground that the Service's adjustment of the applicant's status to that of a lawful permanent resident after the institution of proceedings was the equivalent of admitting the applicant into the United States as a resident alien. The immigration judge added that rescission of the applicant's lawful permanent resident status might be proper, but concluded that the Service could no longer seek to exclude the applicant as a drug trafficker.

On certification, the applicant claims that his case was heard and the proceedings terminated, thus making applicable the doctrine of res judicata. He requests to be notified if the decision is "holding," as he is under the impression that the immigration judge's decision should stand.[2] The Service, for its part, argues that it is without authority to

---

[1] This section of the Immigration and Nationality Act is cited in its form before the redrafting and redesignation of section 212 by the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978. This later redesignation has no impact on the issues in this case.

[2] We note that the immigration judge reserved both parties' right to appeal and granted the Service's request that the case be certified to this Board should neither party perfect an appeal. Although the applicant's statement in his brief would initially lead us to believe that he was misinformed about the procedural posture of this case, our letter

rescind the applicant's status after adjustment under section 210(a)(2)(B) of the Act and that such rescission is therefore not a condition precedent to the commencement or continuation of exclusion proceedings. The parties' arguments notwithstanding, we believe that the issue now before us is whether pending exclusion proceedings must be terminated after adjustment of an applicant's status from lawful temporary-residency to that of a lawful permanent resident under section 210(a)(2)(B) of the Act. We conclude that they need not.

An alien who is seeking to enter the United States who does not appear to be admissible clearly and beyond a doubt is properly placed in exclusion proceedings by operation of section 235 of the Act, 8 U.S.C. § 1225 (1988 & Supp. IV 1992). Such an alien is not considered to have entered the United States, even if he or she is paroled into this country for humanitarian or other purposes. *See* section 212(d)(5)(A) of the Act, 8 U.S.C. § 1182(d)(5)(A) (Supp. IV 1992); *Leng May Ma v. Barber,* 357 U.S. 185 (1958). In addition, it is well established that an alien's status as a lawful permanent resident of the United States does not affect the propriety of exclusion proceedings, although such status may have an impact on the course of the proceedings. *See, e.g., Landon v. Plasencia,* 459 U.S. 21 (1982) (holding that due process applies in exclusion proceedings when the alien sought to be excluded is a lawful permanent resident); *see also Matter of Huang,* 19 I&N Dec. 749, 754 (BIA 1988), and cases cited therein (stating that the burden rests on the Service to establish excludability of lawful permanent residents). On the other hand, aliens who have "entered" the United States, by whatever means, must have their right to remain in this country adjudicated in deportation proceedings under section 242 of the Act, 8 U.S.C. § 1252 (1988 & Supp. IV 1992). *See Matter of Lin,* 18 I&N Dec. 219 (1982) (citing *Luk v. Rosenberg,* 409 F.2d 555 (9th Cir. 1969)). The question before us therefore is whether, after the applicant's parole into the United States, the Service's adjustment of his status to that of a lawful permanent resident under section 210(a)(2)(B) of the Act caused him to make an entry into this country as a matter of law.

The term "entry" is defined in part by section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13) (1988), as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntary or otherwise." We have further refined this definition to require that the following elements be met before an alien effects an entry into the United States as a matter of law: first,

---

to the applicant affording him additional time in which to submit a brief, to which he responded with a second copy of the same, has sufficiently advised him of the issue before this Board and hence the pending nature of these proceedings.

there must be a crossing into the territorial limits of the United States; second, an alien must be inspected and admitted by an immigration officer, or, in the alternative, actually and intentionally evade such inspection; and, finally, the alien must be free from official restraint. *See Matter of Pierre*, 14 I&N Dec. 467 (BIA 1973).

In this case, as the applicant has been paroled into this country, there has been a crossing into the territorial limits of the United States. With respect to the second element, the record establishes that the applicant did not evade inspection, but rather presented himself for same. As such, although the applicant has been inspected, he has not been "admitted" since he was merely paroled into the United States for purposes of prosecution. *See Matter of Lin, supra.*

It is therefore clear that the applicant was properly subject to exclusion at least up to the time that his status was adjusted to that of a lawful permanent resident of the United States. An alien may, however, "enter" the United States by virtue of circumstances arising subsequent to his initial arrival and inspection. *See, e.g., Matter of Patel*, 20 I&N Dec. 368 (BIA 1991) (clearing customs); *Matter of Pierre, supra; see also Matter of Ching and Chen*, 19 I&N Dec. 203 (BIA 1984) (escaping from Service custody); *Matter of A-*, 9 I&N Dec. 356 (BIA 1961); *Matter of A-T-*, 3 I&N Dec. 178 (BIA 1948). We therefore proceed to the question of whether the Service's adjustment of the applicant's status after his parole into the United States under section 210(a)(2)(B) of the Act constituted such an admission as a matter of law.

"Admission" has been defined as occurring when an inspecting officer communicates to an applicant for admission his or her determination that the applicant is not inadmissible. This communication normally takes place when the inspector allows the alien to pass through the port of entry. *See Matter of Patel, supra; Matter of Areguillin*, 17 I&N Dec. 308 (BIA 1980). This is not, however, the only instance in which an alien's admissibility is determined and that determination communicated to the alien. For example, with respect to adjustment of status under section 245 of the Act, 8 U.S.C. § 1255 (1988 & Supp. IV 1992), it is well established that an applicant for relief under that provision is "assimilated" to the position of an alien seeking entry into this country because a grant of such relief is contingent upon a favorable adjudication of the applicant's admissibility under section 212 of the Act. *Matter of Connelly*, 19 I&N Dec. 156 (BIA 1984). In the case of an alien who otherwise meets the *Pierre* requirements of a territorial crossing and freedom from official restraint, his or her adjustment of status under section 245 would logically provide the final element of "admission" and would thereby

create an entry, effective as of the date of adjustment. *Cf. Matter of Lin, supra.*[3]

Adjustment of status under section 210(a)(2) of the Act involves a different procedure, however. That section adjusts the status of an alien granted lawful temporary status under section 210(a)(1) to that of a lawful permanent resident on the basis of a fixed schedule, without regard for the alien's admissibility at that time. *See Matter of Juarez,* 20 I&N Dec. 340, 345 (BIA 1991). This mechanism is perhaps unique under the immigration laws, since an alien admitted for temporary residence under section 210(a)(1) may apparently adjust his or her status to that of a lawful permanent resident even if physically outside of the United States.[4] Obviously, such an alien cannot be said to make an "entry" until his or her subsequent return to this country.

It is true that section 210(a)(3)(B) of the Act, 8 U.S.C. § 1160(a)(3)(B) (Supp. IV 1992), permits the Attorney General to deny a lawful temporary resident adjustment of status under section 210(a)(2) and terminate temporary resident status upon, *inter alia,* the alien's commission of an act that renders him or her inadmissible under section 212(a) of the Act. However, the language of this provision is permissive in nature only; it does not mandate an examination of a lawful temporary resident's admissibility before adjustment to permanent status, such as is the case with respect to adjustment under section 245.

Turning to the facts of this case, the record reflects that the Service clearly could have proceeded to deny the applicant's adjustment of status under section 210(a)(2) of the Act and to terminate his lawful temporary status, but did not. We do not find this omission, however, to constitute a new determination of the applicant's admissibility to the United States, as the Service was not obliged to make such a

---

[3] We note that the administrative mechanism whereby an alien obtains lawful permanent residence under section 245 has been held not to constitute an entry in and of itself for immigration purposes. *See Matter of Connelly, supra* (finding no "territorial crossing" under *Pierre* test). That case, however, holds only that an alien who has already entered the United States as a matter of law does not again effect an entry on the basis of his or her subsequent adjustment of status. In the case of an alien paroled into the United States, an entry has not yet been made, as he or she has not been "admitted." The communication of the alien's admissibility when later adjusted under section 245 completes the final element necessary to enter this country under the *Pierre* definition. That alien's "entry" date would thus occur at the time his or her status was adjusted and not on the earlier date when the alien physically arrived in this country.

[4] In most cases, an alien obtains lawful permanent resident status upon arriving in the United States with a valid immigrant visa. In the context of adjustment of status under other provisions of the Act, such as sections 209, 245, and 245A, 8 U.S.C. §§ 1159, 1255, and 1255a (1988 & Supp. IV 1992), an alien must be physically present in the United States.

finding before the automatic adjustment of the applicant's status took place on December 1, 1990. We further note in this regard that the applicant's conviction took place 2 months before his status was adjusted under section 210(a)(2) of the Act. It is possible the Service would not have had time to terminate his temporary residence in that time period. Had the applicant's conviction occurred a matter of days before the automatic adjustment of his status, it is clear the Service would have been unable to terminate his temporary status before adjustment to permanent status. The applicant, therefore, cannot be assimilated to the position of an alien seeking entry, as no new inspection took place. It follows that he was accordingly not "admitted" into this country when his status was adjusted on December 1, 1990, and since the applicant has not been admitted to the United States, he has not made an entry as a matter of law. *Matter of Patel, supra; Matter of Pierre, supra.*[5]

The necessary conclusion is that these exclusion proceedings are still proper despite the applicant's adjustment of his status to that of lawful permanent resident under section 210(a)(2) of the Act.[6] The following orders shall accordingly be entered.

**ORDER:** The order of the immigration judge entered on March 10, 1993, terminating these exclusion proceedings, is vacated.

**FURTHER ORDER:** The record is remanded to the immigration judge for further proceedings.

---

[5] The record reflects that the applicant was paroled into the United States for purposes of prosecution and is currently incarcerated. It is therefore possible that he is unable to establish that he has been "free from official restraint," the final prong of the *Pierre* test. *See Matter of Patel, supra.* We are unable from a review of the record to determine whether or not this is the case, but, given our holding that the applicant has not been admitted to the United States, we find it unnecessary to remand the record for further findings in this regard.

[6] We note in passing that the applicant's status as a lawful permanent resident is not completely without effect in these proceedings. For example, the burden of proof is now on the Service to establish the applicant's inadmissibility, and the full panoply of due process considerations now applies to these exclusion proceedings. *Landon v. Plasencia, supra; Matter of Huang, supra.*