Ravichandran SHIVARAMAN,
Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–72436.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 2003.

Filed March 12, 2004.

---

Gary G. Singh, Attorney of Law, Central Pacific Plaza, Honolulu, HI, for the petitioner-appellant.

John C. Cunningham, Senior Litigation Counsel, Office of Immigration Counsel, Washington, DC, for the respondent-appellee.

Before: BROWNING, REINHARDT, and THOMAS, Circuit Judges.

REINHARDT, Circuit Judge:

Ravichandran Shivaraman, an Indian national and United States legal permanent resident, appeals the BIA's decision finding him removable for having been convicted of a crime involving moral turpitude committed within five years of "the date of admission." INA § 237(a)(2)(A)(i). Shivaraman argues that the BIA erred in holding that his "date of admission," for purposes of his removal proceeding, was not the date of his lawful entry to the U.S. upon inspection and authorization by an immigration officer, which was more than five years before he committed his crime, but rather the subsequent date, a number of years later, of his adjustment of status to legal permanent resident. We agree.

## I. BACKGROUND

Shivaraman lawfully entered the U.S. on or about September 2, 1989 as an F–1 nonimmigrant student, and, over· seven years later, on January 1, 1997, adjusted his status to a lawful permanent resident. Due to an intervening change in status to "H1B," an alien "who is coming temporarily to the United States" to perform services in a "specialty occupation," see INA § 101(a)(15)(H)(i)(b), and the receipt of other formal extensions of his visas, Shivaraman has remained lawfully present in this country at all times from the date of his lawful entry until at least the date of oral argument before this Court.

On December 27, 2000, over ten years after he lawfully entered the country, Shivaraman was convicted in Hawaii state court of theft in the first degree on the basis of acts he committed between January 27, 1998 and October 10, 1998. Shivaraman could have received a sentence of ten years for his crime, see HAW. REV. STAT. §§ 708–830.5(2), 706–660(1), although he was ultimately sentenced to seven months in jail, ordered to pay restitution of $67,403.30, and placed on five years probation.

In March 2001 the INS served Shivaraman with a Notice to Appear that charged him with removability on the basis of his conviction of a crime of moral turpitude. The INA provides that an alien is removable if he is convicted of a crime, involving moral turpitude for which a sentence of one year or longer may be imposed, that is committed "within *five* years ... after *the date of [his] admission.*" INA § 237(a)(2)(A)(i) (emphasis added).[1] Seven months later, Shivaraman appeared before an immigration judge ("IJ"). He waived his right to testify, and instead set forth

---

1. The INS lodged an additional charge that Shivaraman was subject to removal under INA § 237(a)(2)(A)(iii) for having been con-

victed of an aggravated felony, but that charge was subsequently withdrawn.

his defense in a brief which argued only that, as a matter of law, his "date of admission" for purposes of INA § 237(a)(2)(A)(i) was 1989, when he first entered the U.S. lawfully after inspection and authorization by an immigration officer. Because that "date of admission" was more than five years before he committed his crime, Shivaraman asserted that he was not removable and asked that the proceedings against him be terminated.

On February 1, 2002, the IJ issued his decision. He noted first that the parties did not dispute the nature of Shivaraman's criminal offense or the sentence that could have been imposed. The IJ then concluded that the crime was one of moral turpitude, that the potential sentence was ten years, and that the controlling "date of admission" was December 1, 1997, the date on which adjustment of status was granted—not the date, over seven years earlier, of Shivaraman's lawful entry to the U.S. pursuant to inspection and authorization. Consequently, the IJ found Shivaraman removable as charged under INA § 237(a)(2)(A)(i) and denied his request for termination of the removal proceedings. He then ordered him removed to India.

The IJ relied primarily on a 1999 BIA decision, *Matter of Rosas–Ramirez*, 22 I & N Dec. 616, 1999 WL 187054 (BIA 1999), in which the Board construed "admission" for the purposes of the companion aggravated felony provision to INA § 237(a)(2)(A)(i), a provision under which the date of admission is of no relevance. *See* INA § 237(a)(2)(A)(iii) ("Any alien who

is convicted of an aggravated felony at *any time after admission* is deportable.") (emphasis added). In contrast to Shivaraman, Rosas–Ramirez first entered the country unlawfully, *without* inspection and authorization by an immigration officer, and therefore, his entry did not constitute an "admission" within the meaning of the statutory definition of the term. *See* INA § 101(a)(13)(A). Like Shivaraman, however, Rosas–Ramirez later adjusted his status. The BIA found that Rosas' adjustment of status constituted an "admission," making him deportable for having committed "an aggravated felony at any time after *admission.*" *See* § 237(a)(2)(A)(iii) (emphasis added). Had the BIA not so ruled, it would have been compelled to conclude that Rosas had never been "admitted" and would then have been faced with Rosas' argument that the removal statute applied only to aliens who had been "admitted." Despite the fact that Shivaraman's lawful entry into the U.S. clearly fell within the statutory definition of "admission," *see* INA § 101(a)(13)(A), while Rosas' unlawful entry did not, the IJ found that *Rosas–Ramirez* controlled Shivaraman's case. The IJ explained:[2]

[W]e emphasize that [the] Board's decision in *Matter of Rosas–Ramirez* [ ] clearly sets forth our determination that the term "admission" as used in Section 101(a)(13)(A) of the Act includes aliens "lawfully admitted for permanent residence" under Section 101(a)(20) of the Act. *As a result, the respondent's ... adjustment of status constitutes an "ad-*

---

2. In his reasoning, the IJ adopted and quoted verbatim the analysis of *Rosas–Ramirez* set forth in an unpublished Board decision, *Lang v. Ashcroft*. In *Lang*, like in the present case and unlike in *Rosas–Ramirez*, petitioner was first lawfully "admitted" to the country pursuant to inspection and authorization by an immigration officer. Petitioner argued there, as Shivaraman does here, that *Rosas–Ramirez*

was inapplicable to him by reason of this distinction—an argument that the Board rejected in the passage excerpted above. On appeal to this court, we resolved Lang's claim on a different ground in an unpublished disposition, *see Lang v. Ashcroft*, 81 Fed.Appx. 268 (9th Cir.2003). We therefore had no occasion to consider the issue presented here.

mission" under Section 101(a)(13)(A) of the Act, and therefore, an "admission" for purposes of Section 237(a)(2)(A)(I)(i) of the Act ... (quoting *Lang v. Ashcroft*, No. A70–917–841 (BIA Aug. 17, 2002)) (emphasis added).

The IJ also relied on this court's analysis in *Ocampo–Duran v. Ashcroft*, 254 F.3d 1133 (9th Cir.2001), in which we construed "admission" for purposes of the same aggravated felony provision that was at issue in *Rosas–Ramirez*, § 237(a)(2)(A)(iii)—the provision under which the date of admission is of no relevance. In *Ocampo–Duran*, the petitioner, like Rosas, had first entered the country illegally, and we, like the Board in *Rosas–Ramirez*, held that his change of status constituted an "admission" for purposes of determining removability. On the basis of these two decisions involving aliens whose entry into the country had been unlawful and thus did not constitute an "admission," the IJ held that Shivaraman's "date of admission" for purposes of his removal was *not* the date of his lawful entry into the U.S. following inspection and authorization by an immigration officer, more than five years before he committed his crime, but rather the date of his adjustment of status many years later. After construing INA § 237(a)(2)(A)(i) as rendering the latter date applicable, the IJ concluded that Shivaraman was removable because his conviction occurred within five years of his "admission" to this country.

Shivaraman filed a motion for reconsideration, which the IJ denied. Shivaraman then appealed to the BIA. In his appeal brief, Shivaraman again argued only that, under the statute, his "date of admission" was the date of his lawful authorized entry—not the date of his adjustment of status.

The Board upheld the IJ's decision and dismissed Shivaraman's appeal. The BIA specifically affirmed the IJ's reasoning and analysis with respect to *Rosas–Ramirez* (and, by extension, *Ocampo–Duran*), explaining,

> Upon our review, we find that the IJ acted properly in relying on our ruling in *Matter of Rosas–Ramirez* to find respondent removable under section 237(a)(2)(A)(i) of the Act ... The language of section 237(a)(2)(A)(i) of the Act referring to admission is almost identical to the language of section 237(a)(2)(A)(iii) (the aggravated felony provision), and we find no basis for distinguishing between these provisions.

The BIA also found no basis for distinguishing *Rosas–Ramirez* on account of Shivaraman's *lawful* entry to this country. Although it acknowledged "the fact that," under its analysis, "aliens who were admitted as nonimmigrants and later adjust their status to that of lawful permanent residents essentially have two dates of admission," the BIA nevertheless concluded that this fact "does not alter this analysis": it determined that "*any event* that qualifies as an admission under this definition *can serve* as the date of admission for the purposes of section 237(a)(2)(A)(i)" (emphasis added). Neither the IJ nor the BIA offered any reason for selecting the latter of the two purported dates of admission for purposes of Shivaraman's removal proceedings.

Shivaraman petitioned for review, and we granted his unopposed motion for a stay of removal *pendente lite*.

## II. ANALYSIS

We review de novo an agency's construction of a statute that it administers, subject to established principles of deference. *See INS v. Aguirre–Aguirre*, 526 U.S. 415, 424–25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999). "If the intent of Con-

gress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778.

■ The provision we are required to construe provides that:

Any alien who—

(I) is convicted of a crime involving moral turpitude committed within five years ... after *the* date of *admission,* and

(II) is convicted of a crime for which a sentence of one year or longer may be imposed,

is deportable.

INA § 237(a)(2)(A)(i) (emphasis added). Section 101(a)(13)(A) of the Act expressly defines the statutory term in question, stating that:

The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.

This statutory text leaves no room for doubt, unambiguously defining admission as the lawful entry of the alien into the United States. Further, the statute makes clear that it is *the* date on which the alien lawfully enters that triggers the five-year period under § 237(a)(2)(A)(i). Where an alien is "admitted" to this country pursuant to the unambiguous definition set forth in section 101(a)(13)(A), and where he maintains continuous lawful presence in this country thereafter, we hold that both the plain words of the statute and the intent of Congress is clear: the "date of admission," for purposes of § 237(a)(2)(A)(i), is the date of the alien's lawful entry. Under these circumstances, no deference is due to the Board's construction of the statutory term. *See Chevron,* 467 U.S. at 843–44, 104 S.Ct. 2778. Accordingly, we conclude that the BIA erred in determining that the five-year period began to run from the date on which Shivaraman's status was adjusted to lawful permanent resident rather than from the date on which he lawfully entered the United States after inspection and authorization by an immigration officer.

In finding Shivaraman removable, the BIA did not contest—nor could it—petitioner's assertion that his lawful entry in 1989 constituted an "admission" within the unambiguous definition of the term as set forth in section 101(a)(13)(A). Nor does the government contend otherwise on appeal. Rather, what the Board decided, and what the government argues, is that, despite Shivaraman's lawful 1989 "admission" (i.e. "lawful entry ... after inspection and authorization") and his continuous lawful presence in this country thereafter, under *Rosas–Ramirez* and *Ocampo–Duran* he was *also* "admitted" a second time, pursuant to section 101(a)(20),[3] when he adjusted his status approximately seven years after his "admission." Undeterred by what it acknowledged to be the multiple possible dates of "admission" that such reasoning would yield for a given alien, the BIA concluded that "*any event* that qualifies as an admission under this definition

---

3. Section 101(a)(20) provides:
The term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.

*can serve* as *the* date of admission for the purposes of section 237(a)(2)(A)(i)" (emphasis added). On this basis, the BIA determined that the IJ properly held that, for purposes of Shivaraman's case, the later date of his adjustment of status started the running of the five-year period. Neither the IJ nor the BIA offered any reason as to why that date, rather than the earlier date on which Shivaraman was "admitted" in the manner described in the definition section of the INA, § 101(a)(13)(A), should be deemed to be, for purposes of section 237(a)(2)(A)(i), "*the* date of admission." The BIA simply stated that there could be a number of dates that constitute the date of admission in an individual case, and that any one of them could serve to trigger the five-year period.

In so holding, the Board effectively established a regime whereby an IJ may pick and choose, without guidance, and at his apparent whim, among several dates of "admission" for purposes of determining removability under INA § 237(a)(2)(A)(i). Indeed, as the Board itself recognized, and as the government concedes, in a considerable number of cases such an interpretation would permit—indeed, require—the IJ to elect among a multiplicity of possible dates in order to determine when the five-year period commenced under INA § 237(a)(2)(A)(i). For aliens like Shivaraman, who, under the Board's construction, would have two or more possible dates of "admission" from which time could accrue, the Board's decision allows for an IJ's exercise of unbounded discretion with disparate effects and drastic immigration consequences. Even under different circumstances, in cases in which the definition of "admission" might be deemed to be ambiguous, such a rule would not constitute a permissible interpretation of the statutory term.

Contrary to the Board's contention, neither this Court's precedent, nor its own, supports the subjective, malleable construction of "the date of admission" the BIA sets forth. In fact, as Shivaraman correctly asserts, *Rosas–Ramirez* and *Ocampo–Duran* are not applicable here because Rosas and Ocampo initially entered the U.S. unlawfully *without* inspection and authorization, and remained here illegally until their subsequent adjustment of status. Under INA § 237(a)(2)(A)(iii), that adjustment constituted their first and *only* "admission" to this country for purposes of determining removability. In both of those cases petitioners argued that, because they entered the country illegally, they were never "admitted" under section 101(a)(13)(A), and, accordingly, they were not deportable at all under section 237(a)(2)(A)(iii), which provides, "Any alien who is convicted of an aggravated felony at any time after *admission* is deportable." Consequently, in *Ocampo–Duran,* we were required to determine if the phrase "lawfully admitted for permanent residence," INA § 101(a)(20), could constitute *an* "admission" for purposes of removal under section 237(a)(2)(A)(iii). Our determination that it could was based on the familiar maxim that "we interpret statutes so as to preclude absurd results," *Andreiu v. Ashcroft,* 253 F.3d 477, 482 (9th Cir.2001): Had we concluded that the definition of "admission" contained in section 101(a)(13)(A) was the exclusive definition under all circumstances, our determination would have meant that aliens who entered the U.S. without inspection and authorization and later adjusted their status could not be removed under INA § 237(a)(2)(A)(iii) (because they had never been "admitted"), although those admitted lawfully could be. We stated, "Ocampo–Duran has not explained why Congress would create a loophole in the removal laws for aliens who enter the country with-

out inspection, adjust their status, and then commit aggravated felonies." 254 F.3d at 1135. Accordingly, we rejected "Ocampo–Duran's overly-narrow interpretation" of "admission" in cases in which section 101(a)(13)(A) was plainly inapplicable, and instead embraced an alternative construction of the term in order to eliminate the anomaly presented by Ocampo's argument and, thereby, to avoid the absurd result we would be forced to give the provision in the case of aliens who enter *the country unlawfully.* In so doing, our decision, both in its language and its logic, recognized section 101(a)(13)(A) as the primary, controlling definition of the statutory term.

Similarly, in *Rosas–Ramirez,* the Board recognized at the outset that Rosas did not fall within the primary definition of "admission," the definition set forth in the statute:

> *We agree with the Immigration Judge that the respondent's adjustment of status does not meet the literal terms of the definition of "admission" or "admitted" contained in section 101(a)(13)(A)* ...
> Although adjustment to permanent resident status under section 245A requires that an alien demonstrate admissibility as an immigrant, and is arguably the equivalent of inspection and authorization by an immigration officer, it is *less clear* that such a change in status can be characterized as an "entry" into the United States.

22 I & N Dec. 616, at 2 (emphasis added). Nevertheless, like this Court, the Board reasoned in pragmatic terms, embracing as a definition of "admission" language contained in section 101(a)(20) which defined lawful permanent residence. It did so in light of the various "absurd" results that would have resulted with respect to aliens who first entered the U.S. unlawful-

ly if it failed to find a solution to the conundrum. The Board explained:

> If the term "admitted," as used in the IIRIRA, does not include those afforded lawful permanent resident status through the adjustment process, they would be relegated to the same situation as entrants without inspection and would face exposure to removal charges under section 212(a)(6)(A)(i) as aliens who have not been admitted or paroled. Such a drastic shift in the treatment of a significant number of permanent resident aliens does not appear to have been intended by the IIRIRA or necessitated by a focus limited to the provisions of section 101(a)(13)(A) of the Act.

*Id.* at 5. Accordingly, the Board concluded, "the reference in section 237(a)(2)(A)(iii) of the Act to [ ] 'admission' includes both *those aliens* who are 'admitted' at the time of entry pursuant to section 101(a)(13)(A) as well as *those* who are 'lawfully admitted for permanent residence,' as defined in section 101(a)(20)." *Id.* (emphasis added).

Under the plain language of the statute, Shivaraman is, without question, one of "those aliens [ ] admitted at the time of entry pursuant to section 101(a)(13)(A)." *See id.* His admission, as defined in the definitions section of the INA, occurred more than ten years before the crime he committed.

Were there any doubt that the date of Shivaraman's lawful entry constitutes his date of admission for purposes of section 237(a)(2)(A)(i), the plain text of that provision eliminates any uncertainty. The provision makes it clear that it is *"the* date" of lawful entry after inspection and authorization that triggers the five-year period under the pertinent provision of the statute. *See* INA § 237(a)(2)(A)(i) (emphasis added). There can be only one "the" date. Where the alien legally enters the U.S. after inspection and authorization and remains in a lawful status thereafter, the

date of his lawful entry is "the" date of his admission, as that term is defined in the statute. Accordingly, we hold that Shivaraman is not subject to removal because his offense did not occur within five years of "the date of [his] admission."

## CONCLUSION

For the foregoing reasons, we hold that, where an alien is "admitted" to the United States in accordance with the unambiguous definition of that statutory term as set forth in § 101(a)(13)(A), and where he maintains continuous lawful presence in this country thereafter, the date of his lawful entry constitutes the triggering date for purposes of the five-year removal provision, INA § 237(a)(2)(A)(i). The BIA erred in permitting the IJ to select the date of such an alien's adjustment of status to permanent resident instead. Shivaraman is not removable because he was not convicted of a crime of moral turpitude within five years of the date of his lawful "admission" to this country pursuant to inspection and authorization. Accordingly, we GRANT THE PETITION and VACATE the order of deportation.