# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAIME PEREZ-ENRIQUEZ,

*Petitioner,*

v.

ALBERTO R. GONZALES,* Attorney General,

*Respondent.*

No. 03-70244

Agency No.
A92-002-074

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
August 6, 2004—Seattle, Washington

Filed June 14, 2005

Before: Cynthia Holcomb Hall and Consuelo M. Callahan,
Circuit Judges, and William O. Bertelsman,** Senior Judge.

Opinion by Judge Callahan

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

## COUNSEL

Petitioner was represented by Robert H. Gibbs of Seattle, Washington, at argument and by Raul R. Labrador of Nampa, Idaho, on his brief.

Respondent was represented by Isaac Campbell of Washington, D.C., at oral argument and by Assistant Attorney General Peter D. Keisler, Assistant Director Mark C. Walters, and Deborah N. Misir on the brief.

## OPINION

CALLAHAN, Circuit Judge:

Jaime Perez-Enriquez, petitioner, contends that he may not be removed as an alien who was inadmissible at the time of his adjustment of status under 8 U.S.C. § 1227(a)(1)(A) because his adjustment of status took place on the date he applied for lawful permanent residence. We, however, adopt the Immigration Judge's ("IJ") position, summarily affirmed by the Board of Immigration Appeals ("BIA"), that Perez-

Enriquez's adjustment of status for purposes of 8 U.S.C. § 1227(a)(1)(A) did not occur until his immigration status was adjusted to lawful permanent resident.[1] As petitioner does not contest that he was inadmissible on this later date, his petition for review is dismissed.

## I

Jaime Perez-Enriquez is a citizen and native of Mexico. On or about November 10, 1988, he was granted temporary resident status under the Special Agricultural Workers ("SAW") provisions of § 210 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1160. On December 1, 1990, his temporary lawful status was automatically adjusted to that of a lawful permanent resident pursuant to that section. *Id*. § 1160(a)(2)(B).

On February 27, 1989, when Perez-Enriquez was 18 years old, he pled guilty to the crime of Possession of Narcotic Controlled Substance for Sale, in violation of California Health and Safety Code § 11351. Perez-Enriquez was sentenced to 180 days in jail.

In June 2000, petitioner was served with a Notice to Appear in which the government alleged that he was subject to removal pursuant to sections 237(a)(2)(B)(i) [8 U.S.C. § 1227(a)(2)(B)(i)] (relating to controlled substance convictions after admission) and 237(a)(2)(A)(iii) [8 U.S.C. § 1227(a)(2)(A)(iii)] (relating to aggravated felonies after admission) of the INA.

In July 2001, the government withdrew those charges and charged Perez-Enriquez under § 237(a)(1)(A) [8 U.S.C. § 1227(a)(1)(A)] as "an alien who at the time of adjustment

---

[1] We have held that where, as here, the BIA affirms an IJ's order without an opinion, we review the IJ's order as the final agency action. *Khup v. Ashcroft*, 376 F.3d 898, 902 (9th Cir. 2004).

of status was within one or more of the classes of aliens inadmissible by the law existing at such time: to wit Section 212(a)(2)(A)(i)(II), a violation of any law of a State, relating to a controlled substance."

In August 2001, Perez-Enriquez moved to terminate or dismiss the proceedings arguing that he was not within a class of aliens inadmissible at the time his status was adjusted because the determination of his admissibility was made in November 1988, at which time he had not been convicted of any crimes. The IJ issued an oral decision finding that petitioner "did not properly attain lawful permanent residence status, notwithstanding it being recorded in 1990," and ordering Perez-Enriquez removed to Mexico.

Petitioner appealed to the BIA and on December 19, 2002, the BIA affirmed without an opinion. Perez-Enriquez filed a timely petition for review with the Ninth Circuit on January 15, 2003. We have jurisdiction pursuant to 8 U.S.C. § 1252.

## II

This case concerns the narrow issue of the definition of the term "adjustment of status" as used in 8 U.S.C. § 1227(a)(1)(A) and its application to petitioner.[2] As Perez-Enriquez offers no objections to the IJ's findings of fact, this case presents a legal question that we review de novo. *Shivaraman v. Ashcroft*, 360 F.3d 1142, 1145 (9th Cir. 2004) ("We review de novo an agency's construction of a statute that it administers, subject to established principles of deference."); *Ghaly v. INS*, 58 F.3d 1425, 1429 (9th Cir. 1995)

---

[2]The statute reads:

    (A)   Inadmissible aliens.

    Any alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by law existing at such time is deportable.

(holding that the BIA's purely legal interpretations of the Act are reviewed de novo, but are generally entitled to deference).

If November 10, 1988, the date that Perez-Enriquez applied for permanent residence under the SAW provisions, is the date of his "adjustment of status," then the government has not alleged any facts that would place him within a class of aliens "inadmissible by the law existing at such time." The government might well be able to seek his deportation under some other statute, but it could not prevail under 8 U.S.C. § 1227(a)(1)(A). On the other hand, if "adjustment of status" when applied to Perez-Enriquez refers to December 1, 1990, the date that his status was automatically adjusted to lawful permanent resident, then petitioner's 1989 criminal conviction places him within a class of aliens "inadmissible by the law existing at such time."[3]

As a preliminary matter, we reject the government's argument that under 8 U.S.C. § 1252(a)(2)(C) we lack jurisdiction to consider Perez-Enriquez's petition. In *Alvarez-Santos v. INS*, 332 F.3d 1245, 1251-52 (9th Cir. 2003), we narrowly construed that statute's limitation on judicial review.[4] We further noted that we retained jurisdiction to address due process concerns. *Id.* at 1252. We read *Alvarez-Santos* as allowing us to determine whether as a matter of law and fact Perez-Enriquez is subject to the charges brought against him. In other words, we review whether the allegations in the Notice to Appear fairly apply to petitioner, but not the BIA's determination of the consequences if the allegations do apply.

---

[3]Perez-Enriquez admitted to his conviction before the IJ and has never asserted that he was not "inadmissible" if the date of his adjustment of status is December 1, 1990.

[4]The court held that § 1252(a)(2)(C) deprives it of jurisdiction to review only a specific subset of the removal orders that might result from a § 1229 proceeding, namely those in which there is an administrative determination that the alien is removable on criminal grounds. 332 F.2d at 1251.

Neither side has cited a case or ruling that specifically defines "adjustment of status." In fact, the government's counsel at oral argument opined that the term could refer to a number of changes in a person's immigration status.

Petitioner argues that "adjustment of status" should refer to the date on which he received lawful temporary residence under the SAW provisions because that was the only time at which he was required to make any representations. Thereafter, his adjustment to lawful permanent resident was automatic, with the passage of time. He further points out that pursuant to 8 U.S.C. § 1160(a)(3)(B) the Attorney General could have denied his adjustment to permanent status before he became eligible for adjustment to lawful permanent resident.

The government, in contrast, argues that the statute refers to the date of Perez-Enriquez's adjustment to lawful permanent resident. It argues that the SAW provisions contained two steps and that petitioner was convicted prior to his adjustment to lawful permanent resident. Although the Attorney General was authorized by 8 U.S.C. § 1160(a)(3)(B) to deny adjustments, in light of the purposes of the SAW provisions, the large number of participants, and the limited period of time involved, the Attorney General could not be expected to investigate all interim developments prior to the adjustment date of December 1, 1990. The government further argues, citing *Matter of Jimenez-Lopez*, 20 I & N Dec. 738 (BIA 1993), that the adjustment to lawful permanent resident was not a new determination of admission into the United States, and therefore, not a waiver of his prior conviction.[5]

---

[5]We are here concerned only with the definition of "adjustment of status" as that term is used in 8 U.S.C. § 1227(a)(1)(A), and accordingly, do not address other terms such as "entry" or "date of admission." As the BIA noted in *Jimenez-Lopez*, "entry" may have a very different definition than "adjustment of status." 20 I & N Dec. At 742-43. Similarly, in *Shivaraman*, we found that Shivaraman had only one "date of admission," even though he had several adjustments of his immigration status. 360 F.3d at 1146.

**[1]** For several reasons, we agree that the statute refers to the date of Perez-Enriquez's adjustment to lawful permanent resident. The SAW provisions applied to numerous aliens who were in the United States illegally, and set forth a two-step process for adjustment to permanent resident status. The first step allowed these aliens to alert the government to their presence without penalty — they were granted temporary resident status. At the time of the application, the government presumably had no knowledge of the individual alien, other than what he or she set forth in the application. The time between the adjustment to temporary resident and the automatic adjustment to permanent resident gave the government some time to investigate the applications. Accordingly, to the extent that a determination of "adjustment of status" gives an alien some additional procedural or substantive rights against any effort by the government to deport him or her, it makes sense to use the date of adjustment to permanent resident, even though the adjustment is automatic.

The use of the date of adjustment to permanent resident is consistent with the BIA's decision in *Jimenez-Lopez*. Unlike petitioner, Jimenez left the country after filing an application under the SAW provisions, and was paroled into the country when he was stopped at the border in a vehicle containing marijuana. Nonetheless, the BIA specifically held that exclusion proceedings were proper against Jimenez even though the Attorney General failed to take any action prior to December 1, 1990, and even though Jimenez's status had been automatically adjusted to permanent resident on December 1, 1990. *Jimenez-Lopez*, 20 I & N Dec. at 741-42.[6]

---

[6]The BIA noted that the statutory language allowing the Attorney General to act prior to the automatic adjustment to permanent resident "is permissive in nature only," and "does not mandate an examination of a lawful temporary resident's admissibility before the adjustment to permanent status." 20 I & N Dec. at 742. It further noted that the shortness of time may have made it impossible for the service to terminate temporary residence before the automatic adjustment. *Id.*

**[2]** Furthermore, using the date of adjustment to lawful permanent resident is consistent with the fact that the benefits accorded a lawful permanent resident are far broader than those accorded a temporary resident. Congress instructed the agency to administer the two-step process for obtaining lawful residence under the SAW provisions. The IJ determined that in line with the benefits accruing from lawful permanent residence, "adjustment of status" as used in 8 U.S.C. § 1227(a)(1)(A) should refer to the date of adjustment of status to permanent resident. We find this determination persuasive.

## III

**[3]** Perez-Enriquez was charged pursuant to 8 U.S.C. § 1227(a)(1)(A) with being "an alien who at the time of adjustment of status" was inadmissible because he had been convicted of a state violation relating to a controlled substance. Pursuant to 8 U.S.C. § 1252(a)(2)(C), this court's jurisdiction is limited to determining whether this charge applies to petitioner as a matter of law and fact. We agree with the IJ that "time of adjustment of status" refers to the date of Perez-Enriquez's automatic adjustment to lawful permanent resident. Accordingly, petitioner is fairly subject to the charge and his petition for review is **DISMISSED.**