**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 22-2114**

───────────

SINTIA DINES NIVAR SANTANA,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

───────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────

Argued: December 5, 2023                    Decided: February 2, 2024

───────────

Before WILKINSON, KING, and THACKER, Circuit Judges.

───────────

Petition for review denied by published opinion. Judge King wrote the opinion, in which Judge Wilkinson and Judge Thacker joined.

───────────

**ARGUED:** Hans Christian Linnartz, LINNARTZ LAW OFFICE, P.A., Raleigh, North Carolina, for Petitioner. Gregory Michael Kelch, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Brian M. Boynton, Principal Deputy Assistant Attorney General, Walter Bocchini, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────

KING, Circuit Judge:

Petitioner Sintia Dines Nivar Santana seeks our review of a final order of the Board of Immigration Appeals (the "BIA") that affirmed the decision of an immigration judge (an "IJ") declaring her ineligible for adjustment of status. Nivar, who was deemed inadmissible for falsely claiming to be a citizen of the United States, presents two contentions of error. First, she asserts that the IJ and BIA erroneously ruled that she was required to establish her admissibility "clearly and beyond doubt," rather than by a preponderance of the evidence. Second, she argues that her evidentiary hearing before the IJ was fundamentally unfair because of the IJ's erroneous admission of a Form I-9 (the "employment eligibility form"). As explained herein, we reject Nivar's contentions of error and deny her petition for review.

I.

A.

Nivar is a native and citizen of the Dominican Republic who was admitted into the United States in May 2000 as a nonimmigrant visitor. Her visa authorized her to remain here for only six months, but she remained well beyond that limit. Her noncitizen son, however, eventually was naturalized through honorable service in the United States Army. The young man was thereby able to submit a "Petition for Alien Relative" form to the Citizenship and Immigration Services (the "CIS") and establish his maternal relationship with Nivar. She then completed a follow-up step and filed a Form I-485 with the CIS,

2

dated July 8, 2014, seeking to adjust her immigration status (the "status adjustment request").

In March 2016, the CIS denied Nivar's status adjustment request, ruling that she was inadmissible for falsely claiming to be a United States citizen when she executed the employment eligibility form in applying for a job in 2013 at Golden Horizons, an elder-care provider in Connecticut. That is, on the form bearing Nivar's signature, there was a checked box that provided an affirmative response that said: "I attest, under penalty of perjury, that I am . . . [a] citizen of the United States." *See* J.A. 184.[1] Nearly a year after her status adjustment request was denied, in January 2017, the Department of Homeland Security (the "DHS") served Nivar with a notice to appear before an IJ, charging her with removability under the applicable statutory provision, 8 U.S.C. § 1227(a)(1)(B), for overstaying her visa.

B.

1.

At a preliminary hearing before the IJ in July 2018, Nivar conceded removability on the ground that she had overstayed her visa, but renewed her status adjustment request based on the then-approved petition of her soldier son. At a subsequent IJ hearing in August 2018, Nivar's lawyer advised the IJ that Nivar was eager to testify that she did not falsely claim to be a United States citizen on the employment eligibility form, and that

---

[1] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this matter.

someone else had inappropriately made that assertion therein. The IJ calendared an evidentiary hearing concerning the issue of a false citizenship claim for October 29, 2018, and advised the parties that any evidence to be considered had to be filed with the immigration court at least 15 days before the hearing.

During the fixed 15-day window, the DHS did not submit any documentary evidence. Nivar, however, filed evidence with the immigration court, including her affidavit of September 28, 2018. By her affidavit, Nivar acknowledged that her status adjustment request had been denied on grounds that she had falsely claimed to be a citizen. She also swore that she had examined a copy of the employment eligibility form, that she did not recognize it as "something that [she had] ever read or signed," and that she had never "knowingly checked the box that says I am a citizen of the United States." *See* J.A. 194. Neither party submitted the employment eligibility form to the court.

On October 29, 2018, the IJ conducted an evidentiary hearing on the merits of Nivar's status adjustment request. During the hearing, the IJ advised Nivar that she was required to demonstrate "clearly and beyond doubt" that she was admissible. *See* J.A. 85. Nivar's lawyer interposed a different legal position, asserting that the applicable standard was proof by a preponderance of the evidence.

When Nivar was on the witness stand, her lawyer sought to show her the employment eligibility form and ask if she recognized it. The IJ, however, advised that he had not been provided with the employment eligibility form by either party. The DHS lawyer believed that the employment eligibility form was already in the record, and when the IJ was unable to find it, the DHS lawyer provided it to the IJ and Nivar's lawyer. When

4

Nivar's lawyer objected on authenticity, the DHS lawyer replied that the employment eligibility form had "been litigated" and was "kept in the regular course." *See* J.A. 100. The IJ then accepted the employment eligibility form into evidence, over the objection of Nivar's lawyer.

Immediately after the employment eligibility form was accepted into evidence, Nivar's lawyer asked Nivar if she recognized it, and she responded, "Yes, I think I fill[ed] it out." *See* J.A. 103-04. She then clarified that she had filled out only "the top part" and recognized her handwriting thereon. *Id.* at 104-05. Nivar also testified, however, that she did not remember checking the box indicating that she was "[a] citizen of the United States." *Id.* at 105, 184.

A woman named Kathy DeVeau — an administrator for Golden Horizons elder care when Nivar applied for work — also testified. DeVeau agreed that the employment eligibility form related to Nivar's hiring. She recognized her own handwriting on the portion of the employment eligibility form for driver's license information and recognized the handwriting of a coworker — Jan Hamilton, an Assistant President of Golden Horizons — on the social security portion thereof. When asked if Nivar had checked the box indicating that she was a United States citizen, DeVeau did not know. She went on to testify that Nivar could have checked the box, but believed that Hamilton "probably" placed the checkmark on the employment eligibility form. *See* J.A. 161. DeVeau believed this because she had seen Hamilton "do [that to] other documents." *Id.* at 166. According to DeVeau, Nivar never claimed to be an American citizen and had disclosed to DeVeau that she was not.

5

Another exhibit submitted to the IJ was a letter from Hamilton, who said that she did not place the checkmark on the employment eligibility form and instead asserted that it might have been DeVeau that checked the box. Hamilton said that she "would be surprised if Ms. Nivar knowingly checked the box claiming to be a [United States] citizen." *See* J.A. 189. Hamilton did not believe Nivar would have knowingly checked the box because (1) Nivar had never claimed to be a citizen, (2) they had talked about Nivar's family in the Dominican Republic, and (3) Nivar was a "completely honest individual." *Id.*

### 2.

By written decision of November 2018, the IJ denied Nivar's status adjustment request and ordered her removed. In denying Nivar's request, the IJ ruled that Nivar was "in the position of an alien applying for admission to the United States." *See* J.A. 58. As such, Nivar bore the burden of establishing "clearly and beyond doubt [she was] entitled to be admitted and is not inadmissible." *Id.* From there, the IJ reasoned that Nivar was inadmissible for falsely claiming to be a citizen on the employment eligibility form because the record evidence was "inconclusive." *Id.* at 59. With no one confirming who had checked the box on the employment eligibility form, the IJ ruled that Nivar had not proved "clearly and beyond doubt" that she had not checked the box claiming citizenship. *Id.* at 58.

### C.

In December 2018, Nivar filed a timely notice of appeal with the BIA. On appeal, Nivar maintained that she only needed to demonstrate her admissibility by a preponderance

of the evidence, and not by evidence that was clear and beyond doubt. She also challenged the IJ's admission of the employment eligibility form, along with the IJ's weighing of the evidence.

After an unexplained delay of nearly four years, in October 2022, the BIA affirmed the IJ's decision and dismissed Nivar's appeal. The BIA reasoned that precedents of the BIA and relevant court of appeals make clear that Nivar's burden is to satisfy the "clearly and beyond doubt" standard. *See* J.A. 5. The BIA reiterated that an applicant for adjustment of status must satisfy the higher burden because that type of applicant is in a similar position to a noncitizen seeking entry. The BIA also ruled that the IJ had not erred in admitting the employment eligibility form into evidence because Nivar had not shown that its admission was fundamentally unfair. The BIA emphasized that Nivar conceded that her handwriting was on the employment eligibility form and she had recognized it as a document that she had "fill[ed] out." *See* J.A. 6.

Finally, the BIA upheld the IJ's weighing of the evidence and was satisfied that the IJ had not erred. The BIA ruled that, although Nivar acknowledged that she did not check the box on the employment eligibility form claiming citizenship, "the record was inconclusive as to who did." *See* J.A. 7. The BIA emphasized that neither DeVeau nor Hamilton had definitively identified who checked the box, leaving the evidence as equivocal at best, and falling short of being proof that was "clear[] and beyond doubt." *Id.*

After being denied relief by the BIA, Nivar petitioned this Court for review. We possess jurisdiction to review "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D).

7

II.

We review the BIA's legal conclusions de novo, but our review of its factual findings must be narrow and deferential. *Mulyani v. Holder*, 771 F.3d 190, 197 (4th Cir. 2014). Whether the BIA or the IJ applied the proper legal standard is a question of law subject to de novo review. *See Perez Vasquez v. Garland*, 4 F.4th 213, 221 (4th Cir. 2021). Evidentiary rulings in immigration proceedings, including issues concerning the admission of evidence, are not circumscribed by the Federal Rules of Evidence, but are limited only by due process considerations. *See Anim v. Mukasey*, 535 F.3d 243, 256 (4th Cir. 2008). An issue of whether an admission of evidence violates the applicable due process considerations is also conducted de novo. *See Tinoco Acevedo v. Garland*, 44 F.4th 241, 246 (4th Cir. 2022). Because the BIA adopted and supplemented the IJ's decision, we must review both rulings. *See Jian Tao Lin v. Holder*, 611 F.3d 229, 235 (4th Cir. 2010).

III.

Nivar maintains that two fatal errors were committed by the IJ and the BIA. First, she argues that they erroneously ruled that she must establish her admissibility "clearly and beyond doubt," rather than by a preponderance of the evidence. Second, she argues that

8

her IJ hearing was fundamentally unfair because the IJ admitted her employment eligibility form into evidence. We address those contentions in turn.

## A.

Nivar agrees that she bore the burden of proving her admissibility into the United States. She argues, however, that the IJ and the BIA should have permitted her to establish admissibility by a preponderance of the evidence, rather than requiring proof "clearly and beyond doubt." Her textual and regulatory hook that a preponderance of the evidence standard applies is based on a regulation governing immigration court proceedings, codified at 8 C.F.R. § 1240.8(d) — titled "Relief from removal." The relief from removal regulation provides as follows:

> The respondent shall have the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion. If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving *by a preponderance of the evidence* that such grounds do not apply.

8 C.F.R. § 1240.8(d) (emphasis added).

The problem with Nivar's contention is that, for a noncitizen to qualify for adjustment of status, she must satisfy a statutory provision codified at 8 U.S.C. § 1255(a)(2). It provides, in relevant part, that an applicant for an adjustment of status must prove that she "is admissible to the United States for permanent residence." *See* 8 U.S.C. § 1255(a)(2). And to effectuate § 1255(a)(2), the BIA has maintained a longstanding and consistent practice of "assimilating" noncitizens applying for adjustment of status to the position of an applicant for admission. *See In re Connelly*, 19 I. & N. Dec.

9

156, 159 (BIA 1984); *In re Jimenez-Lopez*, 20 I. & N. Dec. 738, 741 (BIA 1993); s*ee also In re Campos*, 13 I. & N. Dec. 148, 149 (BIA 1969); *In re Rainford*, 20 I. & N. Dec. 598, 601 (BIA 1992); *In re Bett*, 26 I. & N. Dec. 437, 440 (BIA 2014). To be "assimilated" means, in this context, that a noncitizen residing in the United States, and who applies for an adjustment of status, is to be evaluated like an applicant for admission, despite the noncitizen being then physically located in the United States. *See Jimenez-Lopez*, 20 I. & N. Dec. at 741. Otherwise stated, the so-called "assimilation" is a legal fiction that treats an applicant for adjustment of status as if she is actually attempting to make an entry at the border.

Being assimilated to the position of an applicant for admission requires a noncitizen to satisfy the statutory mandate set forth in 8 U.S.C. § 1229a(c)(2)(A), which is that, "if the alien is an applicant for admission," she bears the burden of establishing that she is "*clearly and beyond doubt* entitled to be admitted and is not inadmissible." *See* 8 U.S.C. § 1229a(c)(2)(A) (emphasis added); *see also Bett*, 26 I. & N. Dec. at 440; *In re Richmond*, 26 I. & N. Dec. 779, 790 n.4 (BIA 2016). In these circumstances, her "assimilation" to the position of a noncitizen seeking admission means that Nivar was required to prove — "clearly and beyond doubt" — that she did not falsely claim United States citizenship. *See Bett*, 26 I. & N. Dec. at 440.

The BIA's longstanding interpretation of the § 1255(a)(2) statutory provision to require "assimilation" is significant here, because the BIA's interpretation is entitled to deference by the courts. *See Sijapati v. Boente*, 848 F.3d 210, 214 (4th Cir. 2017). The BIA's interpretation "must be given controlling weight unless th[at] interpretation[ ] [is]

10

'arbitrary, capricious, or manifestly contrary to the statute.'" *See Fernandez v. Keisler*, 502 F.3d 337, 344 (4th Cir. 2007) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). With respect to the BIA's practice of "assimilating" resident noncitizens who apply for adjustment of status to be like applicants for admission, Nivar has not shown that the assimilation practice is arbitrary, capricious, or contrary to law. She has relied solely on an immigration-related regulation that does not speak of the BIA's longstanding "assimilation" practice.

In any event, we have recognized that the § 1255(a)(2) statutory provision requires a noncitizen seeking adjustment of status to demonstrate that she is then and there admissible into the United States for permanent residence. *See Dakura v. Holder*, 772 F.3d 994, 998 (4th Cir. 2014). Based on § 1255(a)(2) and the "assimilation" history of the BIA, we explained in our *Dakura* decision that a noncitizen applying for adjustment of status is in a similar position to a noncitizen seeking entry into the United States. *Id.*[2] And being in such a similar situation requires the noncitizen to prove that she had not falsely represented herself to be a United States citizen, by evidence that is "clear[] and beyond doubt." *Id.* At least three of our sister circuits have likewise recognized the BIA's assimilation practice as requiring that the "clearly and beyond doubt" standard be applied when a noncitizen applicant is seeking to prove admissibility. *See Crocock v. Holder*, 670

---

[2] Our panel in the *Dakura* case in 2014 did not explicitly rely on any authority from the BIA; rather, it relied on § 1255(a) of Title 8, plus a decision of the Eighth Circuit — *Hashmi v. Mukasey*, 533 F.3d 700, 702 (8th Cir. 2008). But the chain of authority relied upon in the *Hashmi* decision confirms that the "assimilation rule" was spawned by the BIA. *See In re Jimenez-Lopez*, 20 I. & N. Dec. 738, 741.

11

F.3d 400, 403 (2d Cir. 2012); *Ferrans v. Holder*, 612 F.3d 528, 531 (6th Cir. 2010); *Godfrey v. Lynch*, 811 F.3d 1013, 1017-18 (8th Cir. 2016). *But see Romero v. Garland*, 7 F.4th 838, 840-41 (9th Cir. 2021) (declining to assimilate admitted noncitizen to position of one seeking admission). In these circumstances, the BIA and IJ did not err in applying the "clearly and beyond doubt" standard in these proceedings.

B.

Nivar's final contention is that the IJ denied her a fundamentally fair hearing by admitting the employment eligibility form into evidence. More specifically, Nivar argues that the DHS lawyer acted in a prejudicial manner, violating the applicable rules in his tardy submission of the employment eligibility form. She also maintains that the DHS lawyer failed to properly authenticate the employment eligibility form.

As Nivar acknowledges, the Federal Rules of Evidence "do not apply in immigration proceedings, and evidentiary determinations are limited only by due process considerations." *See Anim v. Mukasey*, 535 F.3d 243, 256 (4th Cir. 2008). To prevail on a due process claim in an immigration proceeding, a noncitizen must establish "(1) that a defect in the proceeding rendered it fundamentally unfair and (2) that the defect prejudiced the outcome of the case." *Id.* In challenging the admission of evidence in such proceedings, the first of those elements — fairness — is "closely related to the reliability and trustworthiness of the evidence." *Id.* (internal quotation marks omitted). Ultimately, the requirements of due process vary from circumstance to circumstance. But due process requires — at minimum — "the opportunity to be heard at a meaningful time and in a meaningful manner." *See Rusu v. I.N.S.*, 296 F.3d 316, 321 (4th Cir. 2002).

12

1.

Nivar has correctly contended that the DHS's failure to timely submit the employment eligibility form undermined the appearance of fairness at the IJ hearing. Despite the untimely submission, however, Nivar was not deprived of "the opportunity to be heard at a meaningful time and in a meaningful manner." *See Rusu*, 296 F.3d at 321. In March of 2016 — two years prior to the IJ hearing — the CIS had denied Nivar's status adjustment request, based on the employment eligibility form. Additionally, in her affidavit Nivar admitted that she received the employment eligibility form and examined it. And it was Nivar's lawyer who first broached the employment eligibility form issue in the hearing. That sequence indicates that Nivar was not surprised by the employment eligibility form during the IJ hearing and that she had a fair opportunity to account for it. Thus, although the DHS lawyer was untimely and should have complied with his duties, his conduct did not render the IJ hearing fundamentally unfair.

2.

Finally, Nivar maintains that the IJ erred in ruling that the employment eligibility form was admissible evidence. At this point, however, we can only review whether the admission was "fundamentally unfair," which is "closely related to the reliability and trustworthiness of the evidence." *See Anim*, 535 F.3d at 256. After the form's admission, Nivar's lawyer questioned Nivar quite fully, and she confirmed that the handwriting at the top of the form was her own. And the witness DeVeau confirmed that the employment eligibility form had been used by Golden Horizons in Nivar's hiring process. In these

13

circumstances, we are unable to find that the admission of the employment eligibility form was fundamentally unfair.

IV.

Pursuant to the foregoing, Nivar's petition for review must be denied.[3]

*PETITION DENIED*

---

[3] Although we are denying Nivar's petition for review, we do not make light of the misfortune in her situation. Nivar has resided in the United States without any apparent problem for more than two decades, nurturing and raising an apparently able and distinguished son who has served honorably in the United States Army. As an elderly veteran, I have a soft spot for soldiers and their families, and I deeply appreciate his voluntary military service for our country. Furthermore, Nivar — as an elder care service provider — has apparently worked diligently and performed important work in an understaffed and overworked profession. And Nivar not only performed important work, she was considered one of Golden Horizons' "most outstanding caregivers, skilled and caring, always going above and beyond." *See* J.A. 190. Perhaps the situation deserves another look from the Department of Justice?