**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JAIME PEREZ-ENRIQUEZ,
                        *Petitioner,*

            v.

ALBERTO R. GONZALES, Attorney
General,
                        *Respondent.*

No. 03-70244

Agency No.
A92-002-074

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 23, 2006—San Francisco, California

Filed September 15, 2006

Before: Mary M. Schroeder, Chief Judge, Stephen Reinhardt,
Diarmuid F. O'Scannlain, Sidney R. Thomas,
Barry G. Silverman, M. Margaret McKeown,
Kim McLane Wardlaw, Willam A. Fletcher,
Raymond C. Fisher, Richard A. Paez, Marsha S. Berzon,
Richard C. Tallman, Johnnie B. Rawlinson, Jay S. Bybee,
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge William A. Fletcher;
Partial Concurrence and Partial Dissent by Judge Wardlaw;
Partial Concurrence and Partial Dissent by Judge Bybee;
Dissent by Judge Callahan

**COUNSEL**

Raul R. Labrador, Nampa, Idaho, Robert H. Gibbs, Robert H. Pauw, Gibbs Houston Pauw, Seattle, Washington, for the petitioner.

Francis W. Fraser, Deborah N. Misir, U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

W. FLETCHER, Circuit Judge:

The question raised by this petition is whether the admissibility of an alien under the Special Agricultural Worker ("SAW") program is determined only as of the date of admission for lawful temporary residence under 8 U.S.C.

§ 1160(a)(1), or whether it is determined both as of that date and as of the date of adjustment to lawful permanent residence under § 1160(a)(2). We hold that admissibility is determined as of the date of admission for lawful temporary residence, and is not redetermined as of the date of adjustment to lawful permanent residence. We therefore grant the petition for review.

## I.   Factual Background

On about November 10, 1988, Jaime Perez-Enriquez, a citizen of Mexico, was admitted to lawful temporary resident status under the SAW provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1160(a)(1). It is undisputed that at the time he was granted temporary resident status, Perez-Enriquez satisfied the requirements for admissibility under § 1160(a)(1). On December 1, 1990, Perez-Enriquez's status was automatically adjusted to lawful permanent resident under 8 U.S.C. § 1160(a)(2).

On March 27, 1989, after his admission as a lawful temporary resident under § 1160(a)(1), but before his adjustment to lawful permanent resident status under § 1160(a)(2), Perez-Enriquez pled guilty to possession for sale of a controlled substance in violation of California Health and Safety Code § 11135. The court imposed a $100 fine and a suspended sentence of 180 days in county jail. In 2001, the Immigration and Naturalization Service[1] ("INS") sought to remove Perez-Enriquez as an inadmissible alien under 8 U.S.C. § 1227(a)(1)(A) on the ground that, due to his drug conviction, he was inadmissible at the time his status was adjusted to that of lawful permanent resident. Perez-Enriquez contended that because he had been admitted under the SAW program, his admissibility had been determined at the time of his

_____

[1]The Immigration and Naturalization Service has since been replaced by the Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.

admission as a lawful temporary resident under § 1160(a)(1). Therefore, according to Perez-Enriquez, the INS could not seek removal on the ground that he was inadmissible.

The Immigration Judge ("IJ") ordered Perez-Enriquez removed as an inadmissible alien under § 1227(a)(1)(A). The Board of Immigration Appeals ("BIA") summarily affirmed the IJ's decision in a "streamlined" order.

Perez-Enriquez timely petitioned for review in this court. A three-judge panel denied the petition, holding that because Perez-Enriquez had been convicted of his crime before his adjustment to lawful permanent resident status under § 1160(a)(2), he never successfully adjusted to that status. Thus, according to the panel, the INS could seek his removal as an inadmissible alien under § 1227(a)(1)(A) rather than as a lawful permanent resident. *Perez-Enriquez v. Gonzales*, 411 F.3d 1079, 1083 (9th Cir. 2005). We have vacated the decision of the three-judge panel and taken the case en banc to consider Perez-Enriquez's petition anew. *Perez-Enriquez v. Gonzales*, 436 F.3d 1097 (9th Cir. 2006).

Because this was a streamlined decision, we review the IJ's decision as the final agency action. *See Falcon Carriche v. Ashcroft*, 350 F.3d 845, 849 (9th Cir. 2003), *as amended*. We review the legal questions presented de novo. *De Martinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir. 2004), *as amended*. We give *Chevron* deference to established constructions by the BIA of the statutes it is charged to administer. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)); *Ghaly v. INS*, 58 F.3d 1425, 1429 (9th Cir. 1995).

## II.   Jurisdiction

**[1]** The government has argued that under 8 U.S.C. § 1252(a)(2)(C) we lack jurisdiction to review the petition because Perez-Enriquez "is removable by reason of having

committed a criminal offense covered in [8 U.S.C. §] 1182(a)(2)." This argument was made prior to the enactment of the REAL ID Act of 2005. Pub. L. No. 109-13, 119 Stat. 231, 310 (2005). Section 106(a)(1)(A)(iii) of the Act amended 8 U.S.C. § 1252 to add a new subsection. That subsection provides: "Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D). We are presented with a reviewable question of law: whether Perez-Enriquez's admissibility is determined not only as of the date of his admission to lawful temporary status under § 1160(a)(1), but also as of the date of his adjustment to lawful permanent status under § 1160(a)(2). The government contended, and the IJ concluded, that the statute requires that admissibility be determined as of both dates. If the IJ's construction of the statute is wrong, Perez-Enriquez is not removable on the ground charged by the government. We have jurisdiction under § 1252 to review the IJ's legal conclusion.

## III.  Discussion

**[2]** The SAW program was established by Congress in 1986 as a two-step legalization program for certain alien agricultural workers. Under 8 U.S.C. § 1160(a)(1), the Attorney General "shall adjust the status of an alien to that of an alien lawfully admitted for temporary residence if the Attorney General determines that" the individual has applied for such adjustment within eighteen months of November 6, 1986; has resided in the United States and performed agricultural work for at least 90 man-days during the twelve-month period ending on May 1, 1986; and is otherwise admissible as an immigrant. After a statutorily prescribed time period, the Attorney General then "shall adjust the status of any alien provided lawful temporary resident status under paragraph (1) to that of

an alien lawfully admitted for permanent residence." *Id.* § 1160(a)(2).

Under § 1160(a)(3)(A), the Attorney General "may terminate" an individual's temporary resident status at any time prior to adjustment of status to a lawful permanent resident. Under § 1160(a)(3)(B), the Attorney General "may deny adjustment to permanent status and provide for termination of the temporary resident status" under § 1160(a)(1) if, inter alia, "the alien . . . is convicted of a felony . . . committed in the United States." However, if the Attorney General does not act affirmatively to terminate an alien's temporary resident status under § 1160(a)(3), that status is automatically adjusted to permanent resident under § 1160(a)(2) after the passage of the requisite time period.

**[3]** The government, however, contends that 8 U.S.C. § 1227(a)(1)(A) dictates a different timetable for determining admissibility than just described. Section 1227(a)(1)(A) provides:

> Inadmissible aliens
>
> Any alien who *at the time of* entry or *adjustment of status* was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable.

(Emphasis added.) The government contends that the admissibility of all aliens — even aliens already admitted to lawful temporary resident status under the SAW program under § 1160(a)(1) — is determined, for purposes of *any* adjustment of status, as of the date of that adjustment. By the government's logic, Perez-Enriquez's conviction rendered him inadmissible at the time of his adjustment from temporary to permanent legal resident status. Therefore, according to the government, Perez-Enriquez is removable as an inadmissible alien under § 1227(a)(1)(A).

The legal question is narrow, but the consequence is important. If the admissibility of an alien admitted under the SAW program is determined at the time of his initial adjustment of status to lawful temporary resident under § 1160(a)(1), and if the alien's status is thereafter automatically adjusted to lawful permanent resident without further inquiry into admissibility, the government may institute removal proceedings against the alien. But the government must do so on the premise that the alien is a lawful permanent resident alien rather than that the alien is inadmissible.

Lawful permanent resident aliens have important protections in removal proceedings that are not provided to inadmissible aliens. For example, depending on the circumstances, a lawful permanent resident alien is entitled to seek relief under Section 212(c) of the INA, 8 U.S.C. § 1182(c) (repealed 1996), and *INS v. St. Cyr*, 533 U.S. 289 (2001), or to seek cancellation of removal under 8 U.S.C. § 1229b(a). In Perez-Enriquez's case, the relevant protection is that provided by Section 212(c) and *St. Cyr* because he pled guilty to his drug offense in 1989, prior to the adoption of three statutes limiting the availability of relief under Section 212(c). *See St. Cyr*, 533 U.S. at 297.

**[4]** The BIA has authoritatively construed the statute in the manner urged by Perez-Enriquez. In *Matter of Jimenez-Lopez*, 20 I. & N. Dec. 738 (BIA 1993), Jimenez-Lopez had been admitted to lawful temporary resident status under the SAW program. Jimenez-Lopez sought to return to the United States from Mexico, but was excluded from reentry because marijuana was found in his car at the border. In discussing his excludability under § 1225, the BIA carefully described the operation of the SAW program and § 1160(a):

> [S]ection 210(a)(2) of the Act [8 U.S.C. § 1160(a)(2)] . . . adjusts the status of an alien granted lawful temporary status under section 210(a)(1) [§ 1160(a)(1)] to that of a lawful perma-

nent resident on the basis of a fixed schedule, without regard for the alien's admissibility at that time. This mechanism is perhaps unique under the immigration laws, since an alien admitted for temporary residence under section 210(a)(1) may apparently adjust his or her status to that of a lawful permanent resident even if physically outside of the United States. . . .

It is true that section 210(a)(3)(B) of the Act, 8 U.S.C. § 1160(a)(3)(B) (Supp. IV 1992), permits the Attorney General to deny a lawful temporary resident adjustment of status under section 210(a)(2) and terminate temporary resident status upon, inter alia, the alien's commission of an act that renders him or her inadmissible under section 212(a) of the Act [§ 1182]. However, the language of this provision is permissive in nature only; it does not mandate an examination of a lawful temporary resident's admissibility before adjustment to permanent status, such as is the case with respect to adjustment under section 245 [§ 1227].

. . .

[T]he record reflects that the Service clearly could have proceeded to deny the applicant's adjustment of status under section 210(a)(2) of the Act and to terminate his lawful temporary resident status, but did not. We do not find this omission, however, to constitute a new determination of the applicant's admissibility to the United States, as the Service was not obliged to make such a finding before the automatic adjustment of the applicant's status took place on December 1, 1990.

*Id.* at 742-43 (internal citation omitted). The BIA held that Jimenez-Lopez was excludable from the United States

because of his attempt to smuggle marijuana into the United States, but that he was excludable only as a lawful permanent resident alien, not as a temporary resident. The BIA was explicit on this point: "The necessary conclusion is that these exclusion proceedings are still proper *despite the applicant's adjustment of his status to that of lawful permanent resident under section 210(a)(2) of the Act [§ 1160(a)(2)]*." *Id.* at 743 (emphasis added).

**[5]** We conclude that the BIA's opinion in *Jimenez-Lopez*, published in 1993, is alone dispositive of this case as a clear, authoritative explication of the operation of § 1160(a). We give *Chevron* deference to published decisions of the BIA interpreting the immigration statutes it is charged to administer. As stated by the Supreme Court in *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999):

> The Attorney General, while retaining ultimate authority, has vested the BIA with power to exercise the "discretionary power and authority conferred upon the Attorney General by law" in the course of "considering and determining cases before it." 8 C.F.R. § 3.1(d)(1) (1998). Based on this allocation of authority, we recognized in *Cardoza-Fonseca*, [480 U.S. 421 (1987)], that the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms "concrete meaning through a process of case-by-case adjudication"[.]

Despite this statement in *Aguirre-Aguirre*, the dissent contends that we should not give *Chevron* deference to *Jimenez-Lopez*. It gives three reasons. First, the dissent states that "the applicable immigration statutes have changed considerably since 1993." Diss. op. at 11413. In a broad sense it is, of course, true that the immigration statutes "have changed considerably since 1993." But the narrower issue relevant to this case is whether any of the "applicable" statutes has changed.

The dissent fails to identify any statutory provision applicable to this case that has changed since 1993.

Second, the dissent states that "the Attorney General of the United States[ ] does not share the panel's reading of *Jimenez-Lopez*. . . . It seems anomalous to give deference to an agency determination that is contrary to the position taken by the head of the agency." This statement disregards that the Attorney General has vested his discretionary interpretive authority to the BIA, *see* 8 C.F.R. § 3.1(d)(1) (2003), *Aguirre-Aguirre*, 526 U.S. at 425, and that the BIA has already interpreted the statutory provisions at issue. The position of the government in this case is a litigating position taken in opposition to a published decision of the agency charged with administering the statute. *See Bowen v. Georgetown University Hospital*, 488 U.S. 204, 212-13 (1988) ("We have never applied the principle [of *Chevron* and other cases] to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice."); *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 741 (1996) ("Of course we deny deference to 'agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice.' " (citing *Bowen*)).

Third, the dissent states that "if there is more than one possible construction of § 1160, then neither this court nor the BIA is bound under *Chevron* to the majority's interpretation of *Jimenez-Lopez*." Conceding arguendo the dissent's premise that there is more than one possible construction of § 1160, the dissent's conclusion does not follow from its premise. Whenever a statute is susceptible to more than one interpretation, *Chevron* deference is owed to an interpretation provided by the agency charged with administering the statute. In this case, that agency is the BIA. Contrary to the dissent's statement, the BIA is not bound under *Chevron* to follow any particular interpretation of an ambiguous provision of our immigration statutes. Rather, it is *this court* that is bound under *Chevron*. Also contrary to the dissent's statement, we

are not providing an "interpretation of *Jimenez-Lopez*" in this case. Rather, we are following the interpretation of § 1160 provided by the BIA in *Jimenez-Lopez*, as required by *Chevron*.

**[6]** We note for good measure that prior to the three-judge panel decision in this case, the BIA consistently followed *Jimenez-Lopez* in an unbroken string of unpublished opinions. Such unpublished decisions are not entitled to *Chevron* deference, *see Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944), but they serve to underline the correctness of our reading of the BIA's decision in *Jimenez-Lopez*.

For example, *In re Herrera-Mendez*, 2004 WL 1167348 (BIA Jan. 27, 2004), is factually indistinguishable from this case. Like Perez-Enriquez, Herrera-Mendez was an agricultural worker admitted under the SAW program. Also like Perez-Enriquez, he was convicted of a drug offense between the time of his admission to temporary resident status and his adjustment to permanent resident status. Citing *Jimenez-Lopez*, the BIA held that Herrera-Mendez had successfully adjusted to permanent resident status despite the drug conviction. It wrote:

> [R]espondent became a lawful temporary resident of the United States on June 16, 1988, as a special agricultural worker (SAW) pursuant to section 210 of the Act [8 U.S.C. § 1160] . . . . The respondent's drug conviction was entered August 17, 1990, after she had already filed her SAW application. On December 1, 1990, her status was adjusted to lawful permanent resident pursuant to section 210 of the Act.

> The rules and procedures for adjustment to permanent status under section 210(a)(2) of the Act [§ 1160(a)(2)] differ from those relating to adjustment of status under section 245 of the Act [§ 1227].

> Whereas adjustment pursuant to section 245 of the
> Act requires that an alien be admissible to the United
> States at the time of his adjustment to lawful perma-
> nent residence, adjustment pursuant to section
> 210(a)(2) of the Act has no such requirement.
> Instead, pursuant to section 210(a)(1)(C) of the Act,
> an alien's admissibility to the United States is deter-
> mined as of the time of his adjustment to that of law-
> ful temporary resident. After the alien has been
> granted lawful temporary resident status under sec-
> tion 210(a)(1) of the Act, section 210(a)(2) mandates
> that his status be adjusted to that of lawful perma-
> nent resident based on a fixed schedule and without
> further reference to his admissibility. . . . See *Matter
> of Juarez*, 20 I&N Dec. 340, 345 (BIA 1991); see
> also *Matter of Jimenez-Lopez*, 20 I&N Dec. 738, 742
> (BIA 1993).

*Id.* (internal citations and footnotes omitted). The BIA "there-
fore disagree[d] with the DHS that [Herrera-Mendez] was
inadmissible [to] the United States when she adjusted her sta-
tus to lawful permanent resident, and ineligible for section
212(c) consideration." *Id.*

To the same effect are *In re Rodriguez-Rodriguez*, 2004
WL 1739154 (BIA June 29, 2004) ("[P]ursuant to section
210(a)(1)(C) of the Act, an alien's admissibility to the United
States is determined as of the time of his adjustment to that
of lawful temporary resident. . . . After the alien has been
granted lawful temporary resident status under section
210(a)(1) of the Act, section 210(a)(2) mandates that his sta-
tus be adjusted to that of lawful permanent resident alien
based on a fixed schedule and without further reference to his
admissibility. See . . . *Matter of Jimenez-Lopez*[.]"); *In re
Acuna Martinez*, 2004 WL 1167124 (BIA Feb. 12, 2004)
("[U]nlike section 245 of the Act, which requires both a dis-
cretionary determination and consideration of statutory
requirements such as the alien's continuing admissibility, pro-

visions set forth at section 210 do not mandate an examination of a lawful temporary resident's admissibility, but rather provide for an 'automatic' adjustment after 2 years of status as a temporary resident. See *Matter of Jimenez-Lopez*[.]."); and *In re Tellez Gomez*, 2004 WL 1059693 (BIA Jan. 2, 2004) ("After the alien has been granted lawful temporary resident status under section 210(a)(1) of the Act, section 210(a)(2) mandates that his status be adjusted to that of lawful permanent resident based on a fixed schedule and without further reference to his admissibility. See . . . *Matter of Jimenez-Lopez*[.]").

## IV.   No Remand under *INS v. Ventura*

The government contends that the BIA's unpublished decisions just described did not answer the question now before us — whether § 1227(a)(1) requires that the admissibility of SAW workers must be determined at the time of readjustment of status to permanent resident alien under § 1160(a)(2). It argues that therefore, at a minimum, we should remand this case to the BIA under *INS v. Ventura*, 537 U.S. 12 (2002), for an answer to that question. For two reasons, we disagree with the government's contention that a *Ventura* remand is required.

First, contrary to the government's contention, the BIA's unpublished decisions did answer the question now before us. For example, *Herrera-Mendez* is, as noted above, factually indistinguishable from this case. The BIA concluded that Herrera-Mendez had successfully adjusted her status and was therefore eligible for relief under Section 212(c). The necessary premise underlying that conclusion is that Herrera-Mendez, and SAW aliens in her position, were not "inadmissible" at the time of their adjustment to permanent resident status under § 1162(a)(2). The BIA's conclusion thus addressed precisely the question now before us, for the key phrase in § 1227(a)(1)(A) is "[i]nadmissible . . . at the time of . . . adjustment of status."

**[7]** Second, until the three-judge panel's decision in this case, the BIA consistently followed the construction of § 1160(a) articulated in *Jimenez-Lopez* and reflected in the unpublished decisions described above. As a result of the three-judge panel's decision in the case now before us, the BIA felt compelled to change its construction. In 2004, the BIA initially decided *In re Flores-Munoz*, 2004 WL 2418626 (BIA Aug. 27, 2004), in accordance with *Jimenez-Lopez*. In the course of its unpublished decision, the BIA wrote what had, by 2004, become a virtual boilerplate:

> The rules and procedures for adjustment to permanent status under section 210(a)(2) of the Act [8 U.S.C. § 1160(a)(2)] differ from those relating to adjustment of status under section 245 of the Act [8 U.S.C. § 1227]. Whereas adjustment pursuant to section 245 of the Act requires that an alien be admissible to the United States at the time of his adjustment to lawful permanent residence, adjustment pursuant to section 210(a)(2) of the Act has no such requirement. Instead, pursuant to section 210(a)(1)(C) of the Act, an alien's admissibility to the United States is determined as of the time of his adjustment to that of lawful temporary resident. . . . After the alien has been granted lawful temporary resident status under section 210(a)(1) of the Act, section 210(a)(2) mandates that his status be adjusted to that of lawful permanent resident based on a fixed schedule and without further reference to his admissibility. See . . . Matter of Jimenez-Lopez, 20 I&N Dec. 738, 742 (BIA 1993)[.]

After the decision of the three-judge panel in this case, the government moved to reopen in *Flores-Munoz*. In an unpublished decision granting the motion, the BIA wrote:

> Initially, we note that in our August 27, 2004, decision, we determined that pursuant to section

210(a)(1)(C) of the Act, an alien's admissibility is determined at the time of adjustment to lawful temporary status and is not revisited as subsequent adjustment to lawful permanent status is based upon a fixed schedule without further reference to admissibility. However, the United States Court of Appeals for the Ninth Circuit has recently held that adjustment of status occurs on the date of the automatic adjustment to lawful permanent status under [the SAW program], rather than on the earlier date when the alien received lawful temporary status. See Perez Enriquez v. Ashcroft, 383 F.3d 994 (9th Cir. 2004). Accordingly, the DHS motion is granted[.]

*In re Flores-Munoz*, 2005 WL 1104190 (BIA Mar. 25, 2005).

**[8]** In its second decision in *Flores-Munoz*, the BIA gave no other reason than the decision of the three-judge panel for reversing its long and consistent line of decisions based on *Jimenez-Lopez*. We have no doubt that, left to its own devices, the BIA would have continued to adhere to its decision in *Jimenez-Lopez* and later cases, for the BIA made clear that its second decision in *Flores-Munoz* was compelled by the decision of the three-judge panel of this court. We now hold, on en banc consideration, that this decision of the three-judge panel was incorrect. In this circumstance, we have no reason to remand this case to the BIA under *Ventura*.

## Conclusion

**[9]** Based on the text of 8 U.S.C. § 1160(a), the BIA's decision in *Jimenez-Lopez* construing that text, and the BIA's consistent application of *Jimenez-Lopez* in later decisions, we hold that admissibility for an agricultural worker under the SAW program is determined as of the date of adjustment of status to lawful temporary resident under § 1160(a)(1). Admissibility is not redetermined as of the date of automatic adjustment of status to lawful permanent resident under

§ 1160(a)(2). We therefore grant Perez-Enriquez's petition for review, vacate the order of removal, and remand to the BIA for appropriate further proceedings.

**PETITION GRANTED; REMANDED.**

---

WARDLAW, Circuit Judge, concurring in part and dissenting in part:

I, too, agree with most of the majority's opinion. However, I also agree with Judges Bybee and Silverman that a remand under *INS v. Ventura*, 537 U.S. 12 (2002), is in order.

Although the BIA's ruling in *Matter of Jimenez-Lopez*, 20 I. & N. Dec. 738 (BIA 1993), implicitly controls this decision, the agency must be given an opportunity to make an explicit holding that the relevant admissibility date for a special agricultural worker ("SAW") applicant is the date of admission as a lawful temporary resident. I am persuaded that this is the correct reading of the SAW provisions. As the BIA stated in *Jimenez-Lopez*, adjustment of status under the SAW provisions "involves a different procedure" whereby the applicant's status is adjusted to "that of a lawful permanent resident on the basis of a fixed schedule, without regard for the alien's admissibility at that time." *Id.* at 742.

---

BYBEE, Circuit Judge, with whom SILVERMAN, Circuit Judge, joins, concurring in part and dissenting in part:

I agree with much of the majority's opinion. I write separately because I believe that the majority has overstepped the bounds of *INS v. Ventura*, 537 U.S. 12 (2002).

The majority finds that BIA has previously construed 8 U.S.C. § 1160(a)(1) to mean that Perez-Enriquez's admissibil-

ity is determined only as of the date of admission to lawful temporary status. *See Matter of Jimenez-Lopez*, 20 I. & N. Dec. 738 (BIA 1993). It agrees with BIA and affords these decisions *Chevron* deference. Maj. Op. at 11400. It then contrasts BIA's prior position with its position this case, which BIA evidently felt compelled to take because of the panel's original decision. Finding BIA's position in this case inconsistent with its prior position, the majority concludes that BIA's decision in this case must be erroneous and vacates the order of removal.

I am with the majority until that final step. I am not so confident that we can reach that conclusion for BIA, even though we may have invited the error. An agency has a duty of consistent dealing. It also has the duty, in the first instance, to construe the statutes it enforces. Having determined that BIA has treated Perez-Enriquez in a manner inconsistent with BIA's prior rulings, I would grant the petition and remand to BIA for an explanation. It seems to me that BIA has three options. First, it can determine that its ruling in Perez-Enriquez's case is, indeed, inconsistent with its prior rulings and can grant him the same relief. Based on BIA's observations in *In re Flores-Munoz*, 2004 WL 2418626 (BIA Aug. 27, 2004), on the panel's now-withdrawn opinion in this case, *see* Maj. Op. at 11403-04, I would be surprised if BIA did not acknowledge that it made a mistake in Perez-Enriquez's case and correct it. Second, BIA can explain why Perez-Enriquez's situation is *factually* different from *Matter of Jimenez-Lopez* and the cases following it. Or, third, BIA can explain that it has changed its view on how Section 1160(a)(1) should be construed.

It is the possibility that BIA will pursue this last option that raises the greatest concerns. The Supreme Court has "rejected the argument that an agency's interpretation 'is not entitled to deference because it represents a sharp break with prior interpretations' of the statute in question." *Rust v. Sullivan*, 500 U.S. 173, 186 (1991) (quoting *Chevron U.S.A., Inc. v. Natural*

*Res. Def. Council, Inc.*, 467 U.S. 837, 862 (1984)). "An initial agency interpretation is not instantly carved in stone," because the agency "must consider varying interpretations and the wisdom of its policy on continuing basis." *Chevron*, 467 U.S. at 863-64. Thus, "[t]he [BIA] is not estopped from changing a view [it] believes to have been grounded upon a mistaken legal interpretation." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993). I do not read the majority's decision to conclude that there is only one possible construction of Section 1160, so that any other construction would be unreasonable as a matter of law. *See Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1026 (9th Cir. 2005) (concluding that BIA departed from its prior practice and that its "interpretation is unreasonable, [and] we need not defer to it"). Were BIA to change its view, we might afford its new position something less than full *Chevron* deference, *see Good Samaritan Hosp.*, 508 U.S. at 417; *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987), but I don't see that we preclude BIA from offering a "reasonable rationale supporting its departure from prior practice." *Seldovia Native Ass'n v. Lujan*, 904 F.2d 1335, 1345 (9th Cir. 1990).

Because I don't think that we can prejudge how BIA should treat this case, I respectfully dissent as to Part IV of the opinion. "Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *Ventura*, 537 U.S. at 16. I would grant Perez-Enriquez's petition and remand to BIA to figure it out.

---

CALLAHAN, Circuit Judge, with whom O'SCANNLAIN, TALLMAN, and RAWLINSON, Circuit Judges, join, dissenting:

As noted by the majority, this case concerns a narrow legal issue: whether, in removal proceedings where the alien is

charged under 8 U.S.C. § 1227(a)(1)(A) with being inadmissible at the time of adjustment of status, the adjustment of status date is the date the alien's status was adjusted to legal temporary resident or the date on which it was adjusted to legal permanent resident. Section 1227(a)(1)(A) provides that any "alien who *at the time of entry* or *adjustment of status* was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable." (Emphasis added.) We must therefore consider whether "adjustment of status" refers to November 10, 1988, when Perez-Enriquez presented himself to the government and claimed that he resided in the United States and had performed seasonal agricultural services for at least 90 days, *see* 8 U.S.C. § 1160(a)(1), or December 1, 1990, when his status was automatically adjusted to lawful permanent resident, *see* 8 U.S.C. § 1160(a)(2). Lacking any clear instruction in the statute, we are forced to look beyond the plain language of the statute to determine which date the government must use.

The majority believes that *Matter of Jimenez-Lopez*, 20 I. & N. Dec. 738 (BIA 1993), is dispositive. I cannot agree. The issues decided in *Jimenez-Lopez* were different from the issue presented in this case. Furthermore, the majority seeks to impose its interpretation of *Jimenez-Lopez* against the government. I continue to think that the sounder perspective is that § 1227(a)(1)(A) allows the respondent to use the later date as the adjustment of status date. Accordingly, I dissent from the majority's contrary conclusion.[1]

I

*Jimenez-Lopez* presented a distinct factual setting and resolved distinct legal issues. Jimenez-Lopez applied for lawful temporary residence under the special agricultural worker ("SAW") provisions on June 2, 1988. 20 I. & N. Dec. at 738-

---

[1]I concur in the majority's determination that we have jurisdiction to review the petition.

39. On April 8, 1990, Jimenez-Lopez was returning from a trip to Mexico. Because the car in which he was traveling was found to contain marijuana, Jimenez-Lopez was arrested and "charged with excludability as an alien who the immigration officer had reason to believe was a drug trafficker," and paroled into the United States. *Id*. at 739. On October 1, 1990, he was convicted of importation of a controlled substance and possession of a controlled substance with intent to distribute. *Id*. On December 1, 1990, Jimenez-Lopez's status was adjusted to lawful permanent resident pursuant to 8 U.S.C. § 1160(a)(2). *Id*.

The government brought exclusion proceedings against Jimenez-Lopez. The IJ terminated the proceedings, holding that Jimenez-Lopez's physical entry into the United States and the later automatic adjustment of his status to legal permanent resident constituted admittance into the United States, and he therefore was no longer excludable. *Id.*

The BIA vacated the IJ's termination of the exclusion proceedings. *Id*. at 743. It held that neither Jimenez-Lopez's parole into the United States on the drug charges nor the automatic adjustment of his status to lawful permanent resident constituted "entry" into the United States.[2] *Id*. at 742. In reaching this determination, the BIA noted that Jimenez-Lopez's adjustment of status to legal permanent resident after he was paroled into the United States was automatic, and did not include an admissibility determination. *Id*. at 742-43. Accordingly, he was properly in exclusion proceedings because he had not effected an "entry" into the United States. *Id*. at 743. This determination appears to be of little assistance to our task of determining which of two adjustments of status dates is invoked under § 1227(a)(1)(A).

---

[2]Indeed, the BIA noted that the SAW provisions appeared to allow an alien to "adjust his or her status to that of lawful permanent resident even if physically outside the United States." 20 I. & N. Dec. at 742.

As noted by the majority, *Jimenez-Lopez* states that the automatic adjustment to permanent legal resident under § 1160(a)(2) does not constitute a new determination of the applicant's admissibility to the United States. I do not, however, find in *Jimenez-Lopez* any direct support for the majority's implicit conclusion that the critical "adjustment of status" date for purposes of § 1227(a)(1)(A) must be one for which there was a contemporaneous determination of admissibility. There is nothing in *Jimenez-Lopez* preventing an IJ, in a subsequent removal proceeding charging an alien with inadmissability under § 1227(a)(1)(A), from determining an alien's admissibility as of the date his status was adjusted to legal permanent resident, notwithstanding the fact that the adjustment had been automatic.

In sum, *Jimenez-Lopez*'s holdings that the automatic adjustment to legal permanent resident did not constitute an entry and was not an admissibility determination is not dispositive because it does not answer the question of whether under § 1227(a)(1)(A) the critical "adjustment of status" for purposes of the unique SAW provisions is the initial adjustment to legal temporary resident or the subsequent adjustment to legal permanent resident.[3]

## II

Assuming that the applicability of *Jimenez-Lopez* to this case were established, I would still disagree with the majority's position that *Jimenez-Lopez* is entitled to *Chevron* deference. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999); *see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). *Jimenez-Lopez* was

---

[3]Support for the use of the later date may be gleaned from the BIA's observation in *Jimenez-Lopez* that the provision allowing the Attorney General to terminate legal temporary resident status was "permissive in nature only," and its suggestion that a failure to do so should not weigh against the government. 20 I. & N. Dec. at 742.

decided thirteen years ago and it appears that reasonable minds may differ as to its meaning.[4] Moreover, the applicable immigration statutes have changed considerably since 1993, and the respondent in this case, the Attorney General of the United States, does not share the panel's reading of *Jimenez-Lopez*. In *Aguirre-Aguirre*, the Supreme Court gave *Chevron* deference to a position advanced by both the BIA and the Attorney General. 526 U.S. at 424. It seems anomalous to give deference to an agency determination that is contrary to the position taken by the head of the agency.[5]

Moreover, if there is more than one possible construction of Section 1160, then neither this court nor the BIA is bound under *Chevron* to the majority's interpretation of *Jimenez-Lopez*. As noted in Judge Bybee's concurring and dissenting opinion, the Supreme Court has recognized that an agency can, and should be allowed to, change its mind. The Supreme Court has "rejected the argument that an agency's interpretation 'is not entitled to deference because it represents a sharp break with prior interpretations' of the statute in question." *Rust v. Sullivan*, 500 U.S. 173, 186 (1991) (quoting *Chevron*, 467 U.S. at 862). "An initial agency interpretation is not instantly carved in stone," because the agency "must consider varying interpretations and the wisdom of its policy on a continuing basis." *Chevron*, 467 U.S. at 863-64. Thus, "[t]he [Attorney General] is not estopped from changing a view [he] believes to have been grounded upon a mistaken legal interpretation." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402,

---

[4]The Immigration Judge in this case thought that *Jimenez-Lopez* was instructive and that Perez-Enriquez's "adjustment by operation of law does not in some way constitute a waiver or estoppel of the Service's ability to pursue the instant charge."

[5]Of course, a party might argue that an agency should be estopped from changing its position, or that it relied on a prior agency position to its detriment. Such contentions, however, are very different from holding that deference to a difficult-to-comprehend BIA opinion requires that this court's interpretation of that opinion trumps a contrary position advocated by the Attorney General of the United States.

417 (1993). If the Attorney General is not estopped from changing his view, how can he be bound under *Chevron* to an interpretation of a BIA decision with which he does not agree?

In this case, the court is called upon to interpret *Jimenez-Lopez* and Section 1160. The majority's statement, however, that its interpretation is compelled by *Chevron* deference is, I submit, wrong, contrary to Supreme Court precedent, and at odds with our usual criteria for deferring to agency interpretations. *See Miranda Alvarado v. Gonzales*, 441 F.3d 750, 754-59 (9th Cir. 2006) (discussing *Chevron* deference in immigration cases and noting the importance of the role played by the Attorney General).

### III

I remain of the opinion that the government's perspective is reasonable and legal. The SAW provisions applied to numerous aliens who were in the United States illegally, and set forth a two-step process for adjustment to permanent resident status. *See* 8 U.S.C. § 1160. The first step allowed these aliens to alert the government to their presence without penalty: they were granted temporary resident status. At the time of the application, the government presumably had no knowledge of the individual alien, other than what he or she set forth in the application. The time between the adjustment to temporary resident and the automatic adjustment to permanent resident gave the government some time to investigate the applicant. Accordingly, to the extent that an adjustment of status determination gives an alien some additional procedural or substantive rights against any effort by the government to deport him or her, it makes sense to use the date of adjustment to permanent resident, even though the adjustment is automatic.

Furthermore, using the date of adjustment to lawful permanent resident is consistent with the fact that the benefits

accorded a lawful permanent resident are far broader than those accorded a temporary resident. The IJ determined that in line with the benefits accruing from lawful permanent residence, "adjustment of status," as used in 8 U.S.C. § 1227(a)(1)(A), should refer to the date of adjustment of status to permanent resident.

Even if I did not find this approach persuasive, I would affirm because Perez-Enriquez has not shown that the respondent's interpretation of the statute is unreasonable. For these reasons, I respectfully dissent from the majority's contrary conclusion.