**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE ALFREDO GALLEGOS-VASQUEZ,
                      *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,

                      *Respondent.*

No. 05-72412

Agency No.
A092-132-610

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 5, 2010—Pasadena, California

Filed March 1, 2011

Before: Richard D. Cudahy,* Kim McLane Wardlaw and
William A. Fletcher, Circuit Judges.

Opinion by Judge William A. Fletcher

*The Honorable Richard D. Cudahy, Senior United States Circuit Judge
for the Seventh Circuit, sitting by designation.

## COUNSEL

Murray David Hilts, LAW OFFICES OF MURRAY D. HILTS, San Diego, California, for the petitioner.

Thankful T. Vanderstar, OFFICE OF IMMIGRATION LITI-GATION, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., for the respondent.

---

## OPINION

W. FLETCHER, Circuit Judge:

Petitioner Jose Alfredo Gallegos-Vasquez petitions for review from an order of the Board of Immigration Appeals ("BIA") pretermitting his application for a waiver of inadmissibility pursuant to the now-repealed § 212(c) of the Immigration and Nationality Act ("INA"). We hold, based on *INS v. St. Cyr*, 533 U.S. 289 (2001), that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208, 110 Stat. 1214, does not apply retroactively to deny Gallegos-Vasquez the right to apply for relief under § 212(c).

We grant Gallegos-Vasquez's petition and remand for further proceedings consistent with this opinion.

### I.   Background

Gallegos-Vasquez is a native and citizen of Mexico. He became a lawful temporary resident under the Special Agricultural Workers ("SAW") program on November 23, 1987. *See* INA §§ 210, 210A. At the time, he was twenty years old.

After entering the United States, Gallegos-Vasquez had problems with alcohol and drugs. On March 15, 1989, he was convicted of two California state misdemeanors, receiving known stolen property and hit and run with property damage. On July 31, 1989, he was convicted of a third California misdemeanor, taking a vehicle without consent or vehicle theft. The government did not place documentation of these misde-

meanor convictions in the record during his removal proceeding. However, Gallegos-Vasquez admitted to the facts underlying these convictions in that proceeding.

Under the terms of the SAW program, if a lawful temporary resident is convicted of three or more misdemeanors, the Attorney General has the authority to terminate lawful temporary resident status and to deny adjustment to lawful permanent resident status. *See* 8 U.S.C. § 1160(a)(3). The exercise of this power is permissive rather than mandatory. *Id.* The Attorney General did not terminate Gallegos-Vasquez's lawful temporary resident status. As long as Gallegos-Vasquez maintained lawful temporary resident status, the SAW program provided for automatic adjustment to lawful permanent resident status. *See* 8 U.S.C. §§ 1160(a)(2), 1161(d)(1) (1990). Gallegos-Vasquez maintained lawful temporary resident status and automatically adjusted to lawful permanent resident status on December 1, 1990.

On December 18, 1992, Gallegos-Vasquez pled guilty to burglary in California based on acts committed on June 16, 1989. He was sentenced to 240 days' imprisonment and 3 years' probation. The government placed documentation of the conviction and plea in the record during Gallegos-Vasquez's removal proceeding.

During the 1990s, Gallegos-Vasquez began to turn his life around. He was married on October 4, 1990. He participated in a three-week inpatient treatment program for alcoholism in late November and early December 1990. He and his wife had a daughter on November 3, 1994, approximately one year after he was released from prison on the burglary conviction. He became an active member of his church and several church-based groups. In January 1996, he got a job in an auto body shop in Bellingham, Washington. He attended Bellingham Technical College and graduated in March 1997 with a degree in auto refinishing. In December 1997, the owner of the auto body shop where he had been working reported that

Gallegos-Vasquez had been a good worker, writing in a letter, "He is a very dedicated & productive employee. He is also [a] very dependable hard working family man."

Gallegos-Vasquez was at a 7-11 convenience store in Ferndale, Washington, near Bellingham, on October 15, 1997, when a Border Patrol Agent approached him and asked for his identification. The Agent determined that Gallegos-Vasquez was possibly removable and placed him in detention.

On November 15, 1997, Gallegos-Vasquez was served with a Notice to Appear charging that he was removable under 8 U.S.C. § 1227(a)(2)(A)(ii), which provides that an alien is removable if he has been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. The bases for this charge were Gallegos-Vasquez's 1989 misdemeanor convictions for receiving known stolen property and for taking a vehicle without consent or vehicle theft. On December 16, Gallegos-Vasquez was served with an additional Notice to Appear, this one charging that he was removable under 8 U.S.C. § 1227(a)(2)(A)(i), which provides that an alien is removable if he has been convicted of a crime involving moral turpitude punishable by at least one year imprisonment and committed within five years of the date of admission. The basis for this charge was Gallegos-Vasquez's 1992 burglary conviction.

On January 2, 1998, the IJ found Gallegos-Vasquez removable based on his burglary conviction. The IJ did not rely on his two misdemeanor convictions to support his finding of removability. The IJ pretermitted Gallegos-Vasquez's application for cancellation of removal because he failed to satisfy the requirement of seven years' continuous residence under 8 U.S.C. § 1229b(a)(2). Although Gallegos-Vasquez had been physically present in the United States for more than seven years, under IIRIRA's stop-time provision his continuous residence terminated on June 16, 1989, the date of the burglary to which he had pled guilty. *See* 8 U.S.C. § 1229b(d)(1).

The BIA affirmed the order of removal on October 1, 1998. The BIA found Gallegos-Vasquez removable based both on his misdemeanor convictions and on his burglary conviction. The BIA noted that the IJ had not relied on the misdemeanor convictions, but wrote, "[B]ecause the respondent, through counsel, admitted to the facts underlying these charges, we sustain these charges."

For reasons not apparent from the record, Gallegos-Vasquez was not actually removed. In January 1999, after release from INS custody, he moved with his family to Escondido, California. In April, 2001, he got a job with First Class Collision, another auto body shop, where he has worked ever since. The Vice President of First Class Collision wrote a letter to Gallegos-Vasquez's lawyer in June 2003 describing Gallegos-Vasquez as "an excellent employee."

On October 21, 2002, Gallegos-Vasquez moved the BIA to reopen his proceedings on the ground that the Supreme Court's decision in *INS v. St. Cyr*, decided in 2001, gave him the right to apply for relief under § 212(c). The BIA reopened proceedings and remanded to an IJ to determine whether Gallegos-Vasquez was eligible for § 212(c) relief under *St. Cyr*. On September 19, 2003, the IJ held that Gallegos-Vasquez was not eligible for § 212(c) relief. The IJ assumed that Gallegos-Vasquez's 1989 misdemeanor convictions were based on guilty pleas, but the IJ concluded that Gallegos-Vasquez had no settled expectation that he would be entitled to § 212(c) relief when he entered those pleas.

On March 30, 2005, the BIA affirmed. It first held that Gallegos-Vasquez had not established that his 1989 misdemeanor convictions were based on guilty pleas because the conviction documents for those convictions were not in the record. It then held, even assuming Gallegos-Vasquez's misdemeanor convictions were based on guilty pleas, that he did not have a settled expectation of the availability of discretionary relief under § 212(c) when he entered the pleas.

Gallegos-Vasquez timely petitioned for review.

## II.   Standard of Review

When the BIA conducts an independent review of the IJ's findings we review the BIA's findings and not those of the IJ. *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004), cert. denied, *Simeonov v. Ashcroft*, 543 U.S. 1052 (2005). To the extent that the BIA incorporates the IJ's decision as its own, we review the IJ's decision. *Sinotes-Cruz v. Gonzales*, 468 F.3d 1191, 1194 (9th Cir. 2006).

We review factual findings of the BIA for substantial evidence. *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1102 (9th Cir. 2004). We will uphold them unless the evidence compels a contrary result. *Id.*

Whether application of IIRIRA is impermissibly retroactive presents a question of law that we review de novo. *Sinotes-Cruz*, 468 F.3d at 1194.

## III.   Jurisdiction

We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D), which provides that "[n]othing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." The questions presented in this petition are reviewable questions of law. *See Sinotes-Cruz*, 468 F.3d at 1194.

## IV.   Discussion

The government makes two arguments. First, it contends that Gallegos-Vasquez challenges only the decision of the IJ in his opening brief to us. It argues that Gallegos-Vasquez has

thereby waived any challenge to the BIA's decision. Second, the government argues on the merits that Gallegos-Vasquez is ineligible for a § 212(c) waiver under *St. Cyr*.

## A.    Waiver

**[1]** We can make short work of the government's first argument. It is true that Gallegos-Vasquez focuses virtually all of his argument in his opening brief on the decision of the IJ rather than that of the BIA. But his argument is not exclusively aimed at the decision of the IJ. On page eight of his opening brief, he argues that "the Immigration Court and the BIA" both erred in one respect. Further, to the degree that Gallegos-Vasquez's opening brief mistakenly focuses on the IJ's decision, the government was not misled as to the substance of his arguments. We therefore conclude that Gallegos-Vasquez has not waived his challenge to the decision of the BIA.

## B.    Availability of Section 212(c) Relief under *St. Cyr*

The BIA based its decision on two grounds. First, it concluded that there was insufficient evidence that Gallegos-Vasquez pled guilty to his 1989 misdemeanor convictions. Second, it concluded that even if Gallegos-Vasquez pled guilty to his misdemeanor convictions, he did not have a settled expectation of the availability of § 212(c) relief when he entered his pleas. We consider these two grounds in turn.

## 1.    Evidence of Guilty Pleas

**[2]** The foundation of the Supreme Court's decision in *St. Cyr* is its conclusion that when aliens plead guilty to crimes, they do so in reliance on the immigration consequences of their pleas based on the law as it then exists. *See St. Cyr*, 533 U.S. at 322. If Gallegos-Vasquez was convicted of his 1989 misdemeanors after trials rather than pleas, *St. Cyr* does not

help him. *See Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1121-22 (9th Cir. 2002).

**[3]** The government argues that Gallegos-Vasquez failed to prove that his 1989 misdemeanor convictions were based on guilty pleas. *See* 8 C.F.R. § 1240.8(d) (2005) (alien "shall have the burden of establishing that he or she is eligible for any requested benefit or privilege"). The government points out that the conviction documents are not in the record and contends that Gallegos-Vasquez never affirmatively stated that the convictions were based on guilty pleas.

**[4]** Contrary to the government's contention, Gallegos-Vasquez said, through counsel, at the hearing before the IJ that his misdemeanor convictions were based on pleas. The IJ asked Gallegos-Vasquez's counsel to confer with Gallegos-Vasquez to determine if he knew what a guilty plea was and if he remembered making such pleas. Counsel responded with the following proffer from Gallegos-Vasquez:

> He basically proffered that all his convictions were through plea. He states that he does know what his trial is. The trial is when there is [sic] 12 people in a jury. I asked him them [sic] if there was any testimony taken, and he said there wasn't.
>
> So I believe he knows what a trial is, and I believe he knows that he, oh, there's another thing. He said the reason why he took the plea, is was [sic] because he was given such a short time. And so I believe he knows what a plea is, he knows what a trial is, and that he is competent to explain that he only received pleas.

**[5]** We regard Gallegos-Vasquez's statements through counsel as clear evidence that his misdemeanor convictions were based on guilty pleas. We recognize that there was no documentary evidence of Gallegos-Vasquez's misdemeanor

convictions in the record before the IJ and the BIA in his reopened proceedings. But the BIA was willing in 1998, at the urging of the government, to enter a removal order against Gallegos-Vasquez based on these convictions when the only evidence was Gallegos-Vasquez's statements through counsel admitting the facts underlying them. The government cannot now contend that Gallegos-Vasquez's statements through counsel about these same convictions should be disregarded.

**[6]** Gallegos-Vasquez's statements are conclusively supported by the very brief periods of time between his offenses and his convictions. The BIA found in its 1998 removal order that Gallegos-Vasquez's March 15, 1989, misdemeanor convictions for receiving known stolen property and hit and run with property damage were based on crimes committed on March 2, 1989. His July 31, 1989, misdemeanor conviction for taking a vehicle without consent or vehicle theft was based on a crime committed on July 27, 1989. At oral argument before us, the government could not explain how a criminal trial could have been concluded thirteen days after the crimes in the first case, and four days after the crime in the second case. The simple answer is that they could not have been.

**[7]** We therefore conclude that the evidence compels the finding that Gallegos-Vasquez pled guilty in March and July 1989 to misdemeanor convictions for receiving known stolen property and for taking a vehicle without consent or vehicle theft.

### 2. Settled Expectation of Availability of Section 212(c) Relief

**[8]** Under pre-1996 immigration law, the Attorney General had broad discretion to grant relief to aliens who were deportable due to criminal convictions. *See St. Cyr*, 533 U.S. at 294-295. This relief was provided by § 212(c) of the INA, as then codified at 8 U.S.C. § 1182(c), which stated:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General.

8 U.S.C. § 1182(c) (1990) (repealed 1996). Although literally only applicable to exclusion proceedings, the BIA also provided § 212(c) relief in deportation proceedings to permanent residents with unrelinquished domicile of seven consecutive years. *See St. Cyr*, 533 U.S. at 295 (quoting *Matter of Silva*, 16 I. & N. Dec. 26, 30 (BIA 1976)); 8 C.F.R. § 1212.3; *cf. Abebe v. Mukasey*, 554 F.3d 1203, 1207 (9th Cir. 2009) (en banc) ("nothing we say today casts any doubt on [8 C.F.R. § 1212.3]"). Prior to 1996, § 212(c) relief was unavailable only to aggravated felons who had served a term of imprisonment of at least five years. *See St. Cyr*, 533 U.S. at 297 (citing 104 Stat. 5052). Access to § 212(c) relief was important to aliens with criminal convictions because IJs and the BIA granted over half of the applications for relief. *Id.* at 296 n.5.

**[9]** In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA") and then passed IIRIRA. Section 440(d) of AEDPA narrowed the availability of § 212(c) relief. *See St. Cyr*, 533 U.S. at 297 (citing 110 Stat. 1277). IIRIRA repealed § 212(c) altogether and replaced it with cancellation of removal, which provides relief to a narrower class of removable aliens. *Id.* (citing 110 Stat. 3009-597).

In *St. Cyr*, the Supreme Court addressed the question of whether IIRIRA applied retroactively to deny § 212(c) relief to aliens who had, before the passage of AEDPA and IIRIRA, pled guilty to offenses making them deportable (or, in the language of IIRIRA, removable). St. Cyr was a Haitian national who became a lawful permanent resident in 1986. *Id.* at 293. Ten years later, before Congress passed AEDPA or IIRIRA,

he pled guilty to a deportable offense. *Id.* Removal proceedings were begun after the passage of both statutes. The government argued that the Attorney General no longer had the power to grant § 212(c) relief. *Id.*

**[10]** The Court held that St. Cyr was eligible for § 212(c) relief despite the repeal of § 212(c) by IIRIRA. Applying the two-step retroactivity analysis in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Court held (1) that IIRIRA is ambiguous regarding retroactivity, *St. Cyr*, 533 U.S. at 314-320; and (2) that application of IIRIRA to aliens who pled guilty before its passage has an impermissible retroactive effect. *Id.* at 320-26. The Court reasoned that aliens were well aware of the immigration consequences of criminal convictions and thus relied on the possibility of obtaining § 212(c) relief when they agreed to plead guilty. *Id.* at 325. The Court wrote that without clear Congressional intent, courts will not read a statute to violate the "reasonable reliance[ ] and settled expectations" of access to § 212(c) relief that informed the aliens' decisions to plead guilty. *Id.* at 321 (quotations omitted). The Court held that "§ 212(c) relief remains available for aliens, like respondent, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Id.* at 326.

When St. Cyr pled guilty, his plea made him immediately deportable. His reliance at the time of his plea on the availability of relief under § 212(c) was therefore evident. But we have held that an alien does not need to have been immediately deportable at the time of his or her plea to benefit from the reliance interest articulated in *St. Cyr*. In *United States v. Leon-Paz*, 340 F.3d 1003 (9th Cir. 2003), the petitioner had entered the United States as a special agricultural worker in 1988 with lawful temporary resident status. Like Gallegos-Vasquez, he automatically adjusted to lawful permanent resident status in late 1990. He pled guilty to burglary in 1995 and was sentenced to four years in state prison.

When Leon-Paz pled guilty in 1995, his burglary conviction did not render him deportable because his four-year sentence was insufficient to render his crime an aggravated felony for immigration purposes. *Id.* at 1005. He was therefore not eligible for § 212(c) relief at that time because he was not then deportable. The government instituted removal proceedings against him in 1997, after the passage of AEDPA and IIRIRA. As a result of those statutes, his burglary conviction now made him removable. The IJ advised him in his removal proceedings that he was not eligible for relief under § 212(c). We disagreed with the IJ's advice, holding that Leon-Paz was eligible for § 212(c) relief in that proceeding.

We wrote:

> While it is true that in 1995 Leon did not actually plead to what was an aggravated felony, whereas St. Cyr had done so, it is also true that Leon had two bulwarks to protect himself against attacks on his residence in this country. The first was the fact that he had pled to a crime that was below the aggravated felony threshold, and the second was § 212(c) itself in case the definition of aggravated felony changed as it often had and has.

*Id.* at 1006. AEDPA took down the first bulwark by providing that § 212(c) was not available to aggravated felons. IIRIRA took down the second bulwark by changing the definition of aggravated felony from a crime in which the sentence was at least five years to one in which the sentence was at least one year, and by replacing § 212(c) with cancellation of removal. The combination of AEDPA and IIRIRA made Leon-Paz removable. Once he was removable, the protection of § 212(c) became critically important. However, we wrote that even at the time of his plea Leon-Paz "could rely on the fact that he had a source of protection should his crime be declared an aggravated felony in the future. He, like St. Cyr,

was entitled to the continued protection of § 212(c)." *Id.* at 1007.

In July 1989, Gallegos-Vasquez pled guilty to the misdemeanor of taking a vehicle without consent or vehicle theft. The plea had two consequences. First, because the vehicle conviction was Gallegos-Vasquez's second conviction for a crime involving moral turpitude, he was immediately removable under 8 U.S.C. § 1227(a)(2)(A)(ii). Second, because the vehicle conviction was his third misdemeanor conviction, the Attorney General now had discretionary authority to terminate his lawful temporary resident status. 8 U.S.C. § 1160(a)(3)(B)(ii).

**[11]** At the time of his plea, Gallegos-Vasquez was not immediately eligible for § 212(c) relief. He was not a lawful permanent resident, though he would automatically become one at the end of 1990 if the Attorney General did not choose to exercise his authority to terminate his lawful temporary status. He also had not yet achieved an unrelinquished domicile of seven years in the United States, though he would do so in 1994. Thus, at the time of his plea, he could anticipate that if the Attorney General refrained from acting until the end of 1990, and if he stayed in the United States until 1994, he would become eligible for § 212(c) relief.

**[12]** Gallegos-Vasquez is in the same position as the petitioner in *Perez-Enriquez v. Gonzales*, 463 F.3d 1007 (9th Cir. 2006) (en banc). Perez-Enriquez was admitted to the United States in 1988 as a lawful temporary resident under the SAW program. He pled guilty to a deportable drug offense in 1989, before he achieved lawful permanent resident status and before he achieved seven years of unrelinquished domicile. The Attorney General did not choose to exercise his authority to terminate Perez-Enriquez's lawful temporary resident status, although he had the power to do so. *See* 8 U.S.C. §§ 1160(a)(3)(B)(ii) (Attorney General can deny adjustment to permanent status if alien commits act that makes alien inad-

missible), 1182(a)(2)(A)(i)(II) (alien who has committed offense relating to controlled substance inadmissible). Perez-Enriquez automatically adjusted to lawful permanent resident status on December 1, 1990. He achieved seven years of unrelinquished domicile in 1995. The government initiated removal proceedings against him in 2001.

The question directly before us was not the availability of relief under § 212(c). Rather, the question was whether Perez-Enriquez's date of admissibility was the date of his admission as a lawful temporary resident or the date of his adjustment to lawful permanent resident status. But at stake in the question was whether Perez-Enriquez would be treated in the removal proceedings as a lawful temporary or a lawful permanent resident. The distinction mattered because if Perez-Enriquez was a lawful permanent resident, he could apply for relief under § 212(c). We wrote that if Perez-Enriquez were a lawful permanent resident, then "the relevant protection is that provided by Section 212(c) and *St. Cyr* because he pled guilty to his drug offense in 1989, prior to the adoption of three statutes limiting the availability of relief under Section 212(c)." *Id.* at 1011. We held that Perez-Enriquez was a lawful permanent resident, which meant that he was entitled to § 212(c) relief.

**[13]** Like Perez-Enriquez, Gallegos-Vasquez was admitted as a lawful temporary resident in the late 1980s. Also like Perez-Enriquez, Gallegos-Vasquez pled guilty to a deportable offense in 1989, before he had adjusted to lawful permanent status and before he had achieved seven years of unrelinquished domicile. We conclude that Gallegos-Vasquez, like Perez-Enriquez, had a settled expectation of the availability of § 212(c) relief at the time he pled guilty to his deportable offense in September 1989.

The government makes two arguments against this conclusion. First, the government argues that the fact that Gallegos-Vasquez was not a lawful permanent resident at the time he

pled guilty is itself sufficient to deprive him of a settled expectation under *St. Cyr*. This argument, however, is in effect the same argument we rejected in *Leon-Paz* — that because Gallegos-Vasquez's guilty plea did not make him immediately eligible for § 212(c) relief he did not have a settled expectation of the availability of such relief.

Second, the government argues that because Gallegos-Vasquez's third misdemeanor conviction gave the Attorney General the discretionary authority to terminate his temporary resident status, he could not have had a settled expectation that he would become a lawful permanent resident and thus become eligible for § 212(c) relief. The fact that Gallegos-Vasquez's adjustment to lawful permanent resident status was subject to the Attorney General's discretion, however, does not mean that he could not have had a settled expectation of the likelihood of adjustment to such status and thus the availability of § 212(c) relief. As the Supreme Court explained in *St. Cyr*, "There is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." *St. Cyr*, 533 U.S. at 325.

**[14]** Gallegos-Vasquez pled guilty in 1989 based on the reasonable (and ultimately realized) expectation that the Attorney General would not decide to terminate his temporary resident status, and that § 212(c) relief would be available if he achieved seven years of unrelinquished residence. Had Gallegos-Vasquez faced the certainty that § 212(c) relief would not be available, he may well have elected to force the government to go to trial. *See St. Cyr*, 533 U.S. at 325 ("Because respondent, and other aliens like him, almost certainly relied upon that likelihood [of § 212(c) relief] in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious and severe retroactive effect."). We therefore hold that Gallegos-Vasquez had a settled expectation, within the meaning of *St. Cyr*, of the availability of § 212(c) relief when he pled guilty to the vehicle misdemeanor in September 1989.

## Conclusion

We hold that the evidence compels the finding that Gallegos-Vasquez entered a plea of guilty in September 1989 for the misdemeanor that rendered him subject to deportation. We hold, further, that when he pled guilty he had a settled expectation of the availability of § 212(c) relief within the meaning of *St. Cyr*. We therefore grant the petition and remand for further proceedings consistent with this opinion.

**PETITION GRANTED; REMANDED.**